Henry W. Lengyel, J.
This claim based on the alleged negligence of the State of New York was duly and timely filed. The claim was originally entitled “Ira Rubtchinsky, an infant, by Mary Rubtchinsky, as Guardian ad Litem, * * * On the trial the title was amended to appear as above, since the infant became 21 years óf age on April 12,1965.
The claimant, Ira Rubtchinsky, entered the State University of New York at Albany in the Fall of 1961 as a freshman. As part of the orientation program of the college he was issued a *680 college handbook which among other things set forth information relative to a “ competitive period of contests and fun between the freshman and sophomore classes ” called ‘ ‘ Rivalry ’ This competitive program had been in effect, with minor changes, since 1923 and was conducted under the aegis of the Student Association of the college. There is no question that the college authorities strongly recommended participation in the “ Rivalry ” program as a means of building up the esprit de corps of the college. Part of the “ Rivalry” program was participation in the game of pushball. • This is a game involving 8 participants on a team with the aim of the game being to propel a large (6-foot sphere) inflated leather ball across the opponents’ goal line. The teams were divided into 4 offensive players and 4 defensive players. The offensive players concentrated on pushing or propelling the large sphere toward the opponents’ goal and the defensive players concentrated on interfering with the offensive players by pushing them, tackling them, or in almost any conceivable way keeping them from their appointed task. It is a rough physical game on the style of football or rugby. The college yearbook sets forth the various programs and aspects of the ‘ ‘ Rivalry ’ ’ program. It is clear that a freshman, except for an exempted group, such as veterans, was expected to participate in some phase of the program, ranging from pushball to a banner hunt and requiring the utilization of many different types of talent and physical effort. Claimant Ira Rubtchinsky chose the game of pushball. He appeared at the college field set aside for the pushball game at a few minutes before 10:00 a.m. on November 11, 1961. No special equipment was provided for the game which was conducted under the guidance of upperclassmen. There were four student referees, all upperclassmen, in charge of the game. He was given rudimentary instructions in the game and watched the game being played for four or five minutes before he was sent into the game by the freshman leader as a member of the defensive team. He participated as a defensive player for one play in which he did what he could to keep the sophomore offensive player to whom he was assigned away from the ball. Ira was then shifted to the offensive team. On the next play he got away from the man who was against him and then was hit from behind at or below the knees, which would be considered clipping in football, and was propelled to the ground. He stretched out his hands to break his fall and in so doing sustained a severe and painful gross posterolateral dislocation of the proximal ulna and proximal radius relative to the distal right humerus, together with an associated comminuted fracture *681 of the radial head. The 'State did not dispute the diagnosis, medical treatment, and prognosis testified to at the trial.
The State objected to our receiving in evidence any testimony relative to the college being in control of this activity; or, being responsible in any way for the supervision of this pushball game. It is the State’s position that the “ Rivalry ’’ program was an extracurricular program under the control of the Student Association, which is a separate and distinct entity, according to the State, from the college. We reserved decision on the State’s objection and received such testimony subject to a motion to strike. We now overrule said objection and deny the motion to strike. We do not consider that the case of Faculty-Student Assn. v. City of Albany (17 Misc 2d 404); or, the fact that the Internal Revenue Department granted the Student Association a tax exemption certificate removed this Student Association from under the control of the State College. We point out that under the Student Association constitution, ‘ ‘ The President of the College has the final veto power ”. We believe such arrangement is consonant with the effort to grant college students as much autonomy as possible in their extracurricular activities while still retaining final control in the hands of adult authority.
However, we do not find that the State College authorities violated any duty to these claimants.
Claimants’ counsel has very persuasively argued that this 17-year-old young man was compelled, if not by edict by moral suasion, to participate in this game. We do not so find. Ira impressed us as a self-reliant young man with a mind of his own. He was in part working his way through school which we believe tends to increase the self-reliance and independence of the college student. He could have participated in many different events but voluntarily chose to participate in pushball, perhaps because being 6 feet tall and 200 pounds he believed such would be his forte. He watched the game being played and entered the play knowing it was a rough game. In our opinion he voluntarily assumed the risks of the game.
Although the State College had control over Student Association activities, we do not find that it is required to provide supervision for organized extracurricular activities of students on or off school grounds, unless such activities are so inherently dangerous that the college authorities are under actual or constructive notice that injuries may result to students.
Pushball had been a part of the “ Rivalry ” program since 1923 and in the 38-year period prior to this incident there apparently was no serious injury; or, if there was such, it was not presented *682 to the court at the trial. Certainly, tiré college authorities Were not under notice that serious injury would result , from participation in this game.
Even if we fonnd that the college should have supervised thih activity we would not find liability against the State.
There was no allegation that the playing field used by the students was in defective condition. Therefore, we must assume the college provided a safe area for, the conduct of this game. As stated previously four upperclassmen refereed this game. There was no proof that these referees did not adequately and properly supervise said game. Certainly, even in professionally refereed games such as football, and pushball is in that category, there are isolated instances of violations such as clipping with resulting injury. It is entirely possible that even if the State College had provided referees from its own staff, that this incident might have occurred. We do not believe the State should be, made the insurer of the safety of those who participate in this type sport.
We point to Bennett v. Board of Educ. of City of N. Y. (16 A D 2d 651, affd. 13 N Y 2d 1104) wherein it was stated that “ In after-school-hour playgrounds, no duty, may be imposed upon defendant to provide supervision over the playground users. Nor may defendant be cast in damages for injuries caused by the act of an intervening third party such as the batter in the stinkball game here; the risks of the game were patent and were assumed by the plaintiff as a spectator ”. (See, also, Munson v. Board of Educ., 17 A D 2d 687, affd. 13 NY 2d 854.)
We grant the State’s motions to dismiss made at the end of claimants’ case and at the end of the entire case.