[No. 38533.   Department Two.   April 6, 1967.]

JAMES CHAPPEL, *Appellant*, v. FRANKLIN PIERCE SCHOOL
DISTRICT No. 402, *Respondent.**

*McGavick, Sauriol & Bottiger,* by *R. Ted Bottiger,* for
appellant.

*Gordon, Sager, Honeywell, Malanca & Peterson,* for re-
spondent.

HAMILTON, J.—On May 6, 1964, James Chappel, then a
16-year-old high-school student, was injured while being

*Reported in 426 P.2d 471.

initiated into the Key Club of the Franklin Pierce High School in Pierce County, Washington. His guardian ad litem instituted this action seeking compensatory damages. Trial was had before the superior court sitting with a jury. At the conclusion of all evidence, the trial judge granted the school district's motion to dismiss. This appeal ensued.

The evidence adduced, when viewed in a light most favorable to appellant,[1] reveals that the Franklin Pierce High School Key Club is a chapter of an international organization of Key Clubs sponsored by Kiwanis International. The Franklin Pierce chapter is fostered by the Parkland Kiwanis Club, and has been authorized, approved, accepted, and faculty supervised by the high-school authorities as an extracurricular student organization for several years. Student membership in the chapter is selective, is based upon scholastic and leadership ability, and is subject to faculty approval. The principal activities or projects of the club are oriented toward school and community improvement and are primarily devoted to stimulating the scholastic, cultural, and civic qualities of the membership. Regular meetings are normally held on the school premises and are attended and supervised by a faculty advisor.

Since establishment on the Franklin Pierce school campus, an initiation ceremony for newly elected members, while not compulsory, had become somewhat traditional with the chapter. At the time of the incident here in question and before, the Franklin Pierce school administration had an unwritten regulation that initiation ceremonies for their various student organizations, including the Key Club, would be conducted on the school premises, be held during the course of a day set aside for that purpose, and

---

[1] It is axiomatic that a defense motion for dismissal at the conclusion of the evidence in a case tried to a jury admits the truth of plaintiff's evidence and all favorable inferences to be drawn from the evidence, and if the evidence permits of more than one reasonable interpretation, the court must interpret it most strongly against the moving party. *Frasch v. Leedom,* 62 Wn.2d 410, 383 P.2d 307 (1963); *Cook v. Robeck,* 64 Wn.2d 890, 395 P.2d 89 (1964); *Hall v. Puget Sound Bridge & Dry Dock Co.,* 66 Wn.2d 442, 403 P.2d 41 (1965); *Hellriegel v. Tholl,* 69 Wn.2d 97, 417 P.2d 362 (1966).

be of the "nonhazing" variety. The regulation against "hazing" was in conformity with the general written policy adopted by the Puget Sound League High School Principal's Association. Whether the school's regulation or the League's policy had been fully and formally conveyed to the faculty advisor assigned to supervise the Key Club is not certain. It is certain, however, that, despite the rule, Key Club initiations had for several years been conducted away from the school campus, after school hours, and in a manner which entailed some physical activity and exertion on the part of the candidate. These ceremonies had been so carried on with the knowledge, approval, and supervision of the faculty advisor, and without objection by the school administration or school district authorities.

A short time prior to May 6, 1964, the members of the Key Club met with their faculty advisor and scheduled and planned an initiation for that evening. It was determined that the event would be held at the family residence of one of the members and would include, among others, such initiatory tribulations as a "swat line" and an illusory leap trick. This latter stunt was usually accomplished by blindfolding the candidate, disorienting him by leading or turning him about, having him mount a board or other slightly raised dais, inducing him to believe he was standing at the edge of a swimming pool or at the brink of an elevated platform, and then ordering him to jump. Since the initiate only descended a few inches to a level surface, the results were ordinarily harmless.

On the evening of May 6, 1964, members of the club and the candidates met at the designated residence site for the initiation ceremony. Shortly before the boys arrived and the ceremony commenced, the faculty advisor called the owner of the residence (the father of the club member who had volunteered the premises) and advised him that unforeseen circumstances prevented his presence and requested that the owner supervise the boys. In response to the owner's inquiry as to whether there was anything about the task he should know, the faculty advisor answered in the negative and stated the boys had been

given their orders. Except to admonish his son against any initiates being thrown into a swimming pool which was on the premises, the owner thereafter paid little direct attention to the proceedings.

As the initiation ceremonies progressed the existence of the swimming pool was utilized in carrying out the illusory leap stunt. In accordance with the routine, initiates were blindfolded and individually conducted to the edge of the pool, requested to step upon concrete blocks about 4 inches thick, led to believe they were going to jump into the pool, and in jumping descended only several inches to a level area of lawn adjacent to the pool. When it came James Chappel's turn, for some reason, the site of the jump was changed to an area where the adjacent lawn sloped steeply down and away from the pool edge for about 3 feet. In making his blindfolded jump, young Chappel descended to and landed on the sloping ground near the base of the decline. As a result he sustained a fractured ankle. The faculty advisor testified that had he been present he would not have permitted a jump to uneven ground.

In seeking recompense for the injuries sustained, appellant contended in the trial court that the initiation ceremony was of the "hazing" variety, that injuries are foreseeable from such proceedings, and that the school district was negligent in knowingly sanctioning such an activity without proper supervision. In response, respondent, aside from pleading contributory negligence, argued that such an initiation activity away from school premises was beyond the scope of its supervisory authority and control. Thus respondent asserted the defense of ultra vires.[2]

The trial court in granting respondent's motion to dismiss at the conclusion of all of the evidence accepted its argument and held that the activity in issue was ultra vires. In so holding, the trial court predicated its ruling upon the

[2] The question of the nature of a plea of ultra vires is not presented to us in this case, hence, we do not decide it. There is authority, however, to the effect that ultra vires is an affirmative defense, unless it is apparent on the face of the pleadings. *Yakima Fruit Growers Ass'n v. Hall*, 180 Wash. 365, 40 P.2d 123 (1935).

premise that the evidence failed to establish that the initiation ceremony involved possessed any educational or cultural value.

On appeal, appellant makes two principal contentions. First, that the state tort claims act of 1961 (RCW 4.92.090), as amended by Laws of 1963, ch. 159, § 2, abrogates the defense of ultra vires insofar as school districts be concerned, and second, that, in any event, the defense is not applicable to the circumstances revealed by the evidence in the present case.

■ We find no merit in appellant's first contention. On this score appellant, in essence, argues that enactment of the state tort claims act of 1961, together with its amendment in 1963, repealed by implication the italicized portion of RCW 4.08.120, which provides:

An action may be maintained against a county or other of the public corporations mentioned or described in RCW 4.08.110 [school districts included], either upon a contract made by such county, or other public corporation in its corporate character and *within the scope of its authority*, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation. (Italics ours.)

Virtually the same argument was advanced with respect to RCW 28.58.030, the school district "athletic apparatus" statute, in *Tardiff v. Shoreline School Dist.*, 68 Wn.2d 164, 411 P.2d 889 (1966). We there held that the statutory immunity afforded by RCW 28.58.030 was not repealed by implication. In the instant situation, it is to be noted that in *Coates v. Tacoma School Dist. No. 10*, 55 Wn.2d 392, 347 P.2d 1093 (1960), we held that the italicized language of RCW 4.08.120 above gave rise to and made available, in appropriate cases, the defense of ultra vires. See, also, *Juntila v. Everett School Dist. No. 24*, 178 Wash. 637, 35 P.2d 78 (1934). The rationale adopted in the *Tardiff* case, *supra*, is equally applicable, and is decisive of appellant's first contention.

We agree, however, with appellant's second contention. In the instant situation, it is to be observed that the evi-

dence, when viewed in the favorable light required, reveals that (a) the school district, through the school administrative staff, did accept, authorize and sponsor the Key Club as an approved extracurricular student activity; (b) a faculty advisor was assigned to the club who regularly attended and supervised its meetings and aided in planning its activities; (c) the club, with its scholastic requirements and worthy projects, possessed educational and cultural value; (d) the school administration assumed and asserted authority over initiation activities in that it set aside a time and place for such, and forbid the "hazing" type ceremony; (e) the faculty advisor assigned to the club was either not properly advised of the school's regulatory measures or such rules were indifferently enforced; (f) the faculty advisor attended and supervised previous initiations away from the school campus at which stunts similar to the one here involved were executed, and participated in planning the instant initiation; (g) the existence of a swimming pool at the residence to be used as the site of the instant initiation was known and its potential part in the ceremony discussed at the planning meeting; (h) physical injuries are foreseeable when unsupervised student initiation ceremonies involve physical ordeal on the part of the initiates; (i) the designated faculty advisor failed to attend and supervise the initiation or provide a properly advised and informed substitute; and (j) lack of appropriate supervision proximately caused the injuries complained of.

These factors, in our view, clearly take this case beyond the scope of our holding in *Coates v. Tacoma School Dist. No. 10, supra,* and bring it within the realm of our decision in *Sherwood v. Moxee School Dist. No. 90,* 58 Wn.2d 351, 363 P.2d 138 (1961).

In the *Coates* case, which was before us upon the pleadings only, we held the defense of ultra vires to be applicable, as a matter of law, to the limited circumstances gleanable from the allegations presented. The injury in that case, for which damages were sought, occurred while the student involved was returning home, by a long and circuitous

route, from an off-campus, nonschool day, Hi-Y Club initiation ceremony which was neither authorized, supervised, attended, nor encouraged by the school authorities. Furthermore, as we pointed out in the opinion, there was no factual allegation in the pleadings from which it could be inferred that the organization conducting the ceremony was related to an educational purpose, function or activity over which the school district would be entitled to exercise or assume to exercise authority. In short, the what, why, when, and how of any transfer of the protective custody of the parents over the club member to the school district did not appear in the pleadings.

In the *Sherwood* case, which also came before us on the pleadings only, there were allegations to the effect that the injury sued for arose out of an initiation ceremony conducted by a high school lettermen's society, known as the Red Devil's Club, in a public park, after school hours, under the auspices of the school administration, and with supervision by a teacher assigned as a faculty advisor to the club. Though we did not specifically reach the defense of ultra vires, we did take note of the custom of high schools, as a part of their recreational and athletic programs, to foster lettermen's clubs and of the fact that under our statutes and decisions school districts may, under appropriate circumstances, be held liable for negligence the same as any individual or corporation. Accordingly, in reversing a judgment dismissing the claim of relief, we observed that since it was alleged that the organization and the initiation was under the auspices and supervision of the school district's agents and that negligence on the part of such agents proximately caused the injury, it was proper that the complainant be afforded the opportunity to present his evidence. In a concurring opinion, written by the author of the *Coates* opinion, it was stated at 360:

The attempt of the respondent school district to limit the scope of its authority to matters within the curricular activities, and happenings on the school premises is not realistic. That schools do employ athletic coaches, band directors, even debate coaches, and do exercise supervi-

sion and control over numerous extra-curricular activities is common knowledge. The justification is their educational and cultural value.

█ Analysis of the two decisions would, therefore, indicate that, insofar as the defense of ultra vires be concerned, the significant link between a school district's authority and the varying activities of an extracurricular student organization lies in the educational or cultural values stemming from the student organization, and the nexus between an assertion of the school district's authority and potential tort liability springs from the exercise or assumption of control and supervision over the organization and its activities by appropriate agents of the school district.

█ Where, as here, the evidence reveals that educational and cultural values inhere in the normal activities of an extracurricular student body organization, and the school administration has assumed supervisory responsibility over the organization which, in turn, extends to tacit approval of and faculty participation in planning and supervising off-campus initiation ceremonies involving physical ordeal, the school district cannot relieve itself of potential tort liability arising out of an initiation stunt upon the grounds that, standing alone, the initiation rite possesses no educational or cultural value.

The judgment of dismissal is reversed, and the cause is remanded for new trial.

FINLEY, C. J., WEAVER and ROSELLINI, JJ., and BARNETT, J. Pro Tem., concur.