Donald BRADSHAW, Alfred Cuneo
and Carole Cuneo

v.

Bruce D. RAWLINGS, Borough of Doylestown, Delaware Valley College, Marjorie E. Moyer t/a Sunny Beverages, Maennerchor Society.

Civ. A. No. 77–48.

United States District Court,
E. D. Pa.

Jan. 9, 1979.

Louis Ruprecht, Ruprecht & Graham, Newark, N. J., for plaintiffs.

Edwin F. McCoy, LaBrum & Doak, Philadelphia, Pa., for Bruce Rawlings.

Albert J. Schell, Jr., Post & Schell, Philadelphia, Pa., for Borough of Doylestown.

William T. Campbell, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa., for Delaware Valley College.

Frederick T. Lachat, Jr., Emil F. Toften & Associates, Philadelphia, Pa., for Marjorie Moyer t/a Sunny Beverages.

Clayton T. Hyman, Hyman, McCarthy & Traub, Allentown, Pa., for Maennerchor Soc.

## MEMORANDUM AND ORDER

CAHN, District Judge.

Pending before the court are post-trial motions by three of the defendants and by all of the plaintiffs.[1] The jury trial was bifurcated and in the first phase of the case all of the defendants were found liable except the Maennerchor Society.[2] In the second phase of the case the jury awarded Donald Bradshaw $1,108,067, and awarded the other plaintiffs (Bradshaw's mother and stepfather) the sum of $5,000 each.[3]

## I. FACTUAL BACKGROUND

On April 13, 1975, the plaintiff, Donald Bradshaw, was very seriously injured in an automobile accident. Bradshaw, a sophomore at Delaware Valley College (College) had been attending his class picnic at a grove owned by the Maennerchor Society (Society). The sole means of transportation between the College's campus and the grove was by private automobile. Bradshaw left the grove as a passenger in a 1968 Saab vehicle operated by Bruce D. Rawlings.[4]

1. Defendants Delaware Valley College, the Borough of Doylestown, and Marjorie E. Moyer, t/a Sunny Beverages, have filed motions for judgment notwithstanding the verdict or for a new trial. The plaintiffs, Donald Bradshaw, Carole Cuneo, and Alfred Cuneo, have moved for a new trial on the damage issue only.

2. The Interrogatories to the Jury in the liability phase of the case and the jury's answers are as follows:

1. Has the plaintiff proved by a preponderance of the evidence that any of the following defendants were negligent?
   a. Bruce D. Rawlings?
   ANSWER: YES
   b. Borough of Doylestown?
   ANSWER: YES
   c. Delaware Valley College? *
   ANSWER: YES
   d. Marjorie E. Moyer, t/a Sunny Beverages? *
   ANSWER: YES
   e. Maennerchor Society? *
   * Answer 1c, 1d and 1e ONLY if your answer to 1a is YES.
   ANSWER: YES

2. As to any defendant you found negligent by answering YES in question 1, state whether plaintiff has proved by a preponderance of the evidence that the negligence of such defendant was a substantial factor in causing the accident in question:
   a. Bruce D. Rawlings?
   ANSWER: YES
   b. Borough of Doylestown?
   ANSWER: YES
   c. Delaware Valley College?
   ANSWER: YES
   d. Marjorie E. Moyer, t/a Sunny Beverages?
   ANSWER: YES
   e. Maennerchor Society?
   ANSWER: NO

3a.** Have the defendants proved by a
   ** DO NOT answer question 3 if the only YES answers to questions 1 and 2 are in response to questions 1b and 2b.
   preponderance of the evidence that the plaintiff was contributorily negligent?
   ANSWER: NO
   [If your answer is NO, return to the courtroom. If your answer is YES, proceed to question 3b.]

3. The Interrogatories to the Jury and the jury's answers in regard to the damage assessment phase of the case are as follows:

1. What is the present value in dollars of Donald Bradshaw's loss of future earning capacity?
   $223,627
2. What is the present value in dollars of Donald Bradshaw's future medical expenses?
   $49,475
3. What is the present value in dollars of the future cost of attendants and housekeepers for Donald Bradshaw?
   $334,965
4. State in dollars, without making any reduction to present value, the amount you award to Donald Bradshaw for past, present and future pain and suffering, for loss of life's pleasures, for inconvenience and for disability?
   $500,000
5. State in dollars the amount of loss suffered by Carol Cuneo from the date of the accident until January 1, 1978?
   $5,000
6. State in dollars the amount of loss suffered by Alfred Cuneo from the date of the accident until January 1, 1978?
   $5,000

4. The Saab Motor Company, the manufacturer of the vehicle in question, and Gilbert D. Rawlings, the owner of the vehicle, were originally

Bradshaw and Rawlings were both under twenty-one years of age on April 13, 1975. On his way back to the College, Rawlings chose to travel west on Union Street in Doylestown, Pennsylvania. At the intersection of Union Street and Harvey Avenue, Rawlings lost control of the Saab which then struck a parked vehicle. Both vehicles were a total loss, and the parked vehicle was propelled over the · curb of Union Street. The evidence showed that the Saab vehicle was a compact and that the parked vehicle was full size. As a result of the collision Bradshaw suffered a cervical fracture which caused quadriplegic paralysis. The plaintiffs alleged that Rawlings was negligent in operating the Saab and that the College was negligent in its supervision of the sophomore class picnic.

Union Street is colloquially known as "Dip Street." The dips were constructed many years ago to serve as channels to carry surface water runoff across Union Street. The plaintiffs named the Borough of Doylestown (Borough) as a defendant on the ground that the dips constituted a dangerous and defective condition in the cartway. The plaintiffs also alleged that the Borough failed to warn drivers approaching the dips about the hazard. Persons who reside near the intersection of Union Street and Harvey Avenue testified that on weekend afternoons they would sit on their porches and observe the difficulties encountered by drivers on Union Street crossing the dips. Occasionally when vehicles traversed the dips they would become disabled or parts of the vehicle would fall off.

Marjorie E. Moyer, trading as Sunny Beverages (Sunny), had supplied six or seven half barrels of beer to the officers of the sophomore class at the College. The plaintiffs allege that Sunny was liable for damages caused by the furnishing of alcoholic beverages to persons who it knew or should have known were under twenty-one years of age. With this factual background in mind, I will now turn to the various legal issues raised by the post-trial motions.

named as defendants in this action. Plaintiff, however, voluntarily dismissed them from the case.

## II. THE ALCOHOL ISSUE

The College and Sunny seek judgment notwithstanding the verdict or a new trial on the ground that it was error to submit the alcohol issue to the jury. In accordance with Pennsylvania law a preliminary hearing was held prior to jury selection to determine whether or not evidence of the driver's alleged intoxication would be allowed.[5] At the conclusion of the preliminary hearing I ruled that there was sufficient evidence for a jury to make a reasonable inference that Rawlings' use of alcohol rendered him unfit to drive and that it would not be unfairly prejudicial to permit the presentation of that evidence. *Morreale v. Prince*, 436 Pa. 51, 53, 258 A.2d 508 (1969).

■■■■ At trial the evidence on this issue included testimony from members and officers of the class who arranged for the picnic and were in attendance on the date of the accident. Members of the class were invited to the picnic without paying a fee and draught beer was served in unlimited amounts. The driver Rawlings was at the picnic for a number of hours and was observed drinking beer from a mug which held twelve to sixteen ounces of liquid. At the end of the picnic Rawlings appeared to be "high" and "loose". There were approximately seventy-five students at the picnic, and six or seven half kegs of beer were consumed. The class president testified that Rawlings, after driving away from the picnic ground, returned at a high rate of speed and then operated his vehicle in a circular manner on a grassy field so as to dislodge the turf. The students who testified on this subject referred to his vehicular maneuver as a "donut." The class president testified that as a result of Rawlings' driving behavior he yelled at him to leave the picnic grounds immediately. Bradshaw stated that Rawlings had five or six mugs of beer in his presence and Rawlings admit-

5.  *Vignoli v. Standard M. Freight, Inc.*, 418 Pa. 214, 210 A.2d 271 (1965).

ted to drinking three or four mugs of beer. One witness opined that Rawlings was under the influence of alcohol. Also, Rawlings claims to have no recollection of what occurred from the end of the picnic until after the time of the accident. It is true there was some evidence that Rawlings was not intoxicated. However, on a motion for judgment notwithstanding the verdict, the verdict should not be disturbed if there is competent evidence to support it. *Fireman's Fund Ins. Co. v. Videfreeze Corp.,* 540 F.2d 1171, 1178 (3d Cir. 1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 170 (1977). Here the evidence clearly created a jury issue on the question of intoxication.

■ In my view *Greiner v. Volkswagenwerk Aktiengeselleschaft,* 540 F.2d 85 (3d Cir. 1976), is controlling. In *Greiner* the driver had a modest amount to drink but other factors were sufficient to permit the trial judge to submit the alcohol issue to the jury. In the case at bar the amount of alcohol admittedly consumed is greater than that of the driver in *Greiner,* and there is, as well, evidence of Rawlings' erratic driving at the picnic grounds. Although there was no direct testimony of excessive speed on the part of Rawlings between the picnic ground and the scene of the accident, the jury could infer excessive speed from the evidence that both the Saab and the parked vehicle were total losses, from the position of the vehicles after the impact, and from the testimony of other passengers who shortly before the accident became concerned about the manner in which Rawlings was driving. Nor is the fact that some witnesses refused to describe Rawlings as dead drunk, inebriated, or unable to walk in a balanced manner, grounds for taking the alcohol issue from the jury. Here the amount of beer consumed by Rawlings, the close proximity of time between the end of the picnic and the time of the accident, evidence of wild driving at the picnic ground, the inexperience of Rawlings with alcoholic beverages and the force of the impact lead to an inescapable conclusion that alcohol was a substantial factor in causing this accident. This conclusion is further buttressed by Rawlings' inability to account for what occurred during the time period from the end of the picnic to the point of the accident. *See Risbon v. Cottom,* 387 Pa. 155, 159, 127 A.2d 101 (1956).

■ The College contends that the plaintiff presented no evidence that Rawlings' use of alcohol was a cause of the accident. Pennsylvania law, however, does not require specific evidence of causation in a case of alleged intoxication. Where the issue is negligent driving, the fact of an accident coupled with evidence of impaired driving ability due to the consumption of alcohol, is sufficient to provide the basis for a jury inference of causation. *Majors v. Brodhead Hotel,* 416 Pa. 265, 272, 205 A.2d 873 (1965).

The College further contends that even if the consumption of alcohol was a substantial factor in causing the accident, it is not liable on a negligence basis because it had no duty to supervise the sophomore class picnic unless it had reason to believe that an inherently dangerous activity would be conducted at that affair. The College relies on *Rubtchinsky v. State University of N. Y. at Albany,* 46 Misc.2d 679, 260 N.Y.S.2d 256 (1965). In this case the trial judge decided questions of fact and law. There the plaintiff was injured in a pushball game between freshmen and sophomores. The basis of the decision was that the defendant owed no duty to the plaintiff in that factual context and that the plaintiff assumed the risks of the game. Here the facts are much different. The sophomore class advisor, a faculty member, participated with the class officers in planning the picnic, assisted in the disbursement of funds to purchase alcoholic beverages, and yet failed to attend the picnic. Nor did he obtain another faculty member to attend the picnic as his substitute. The College administration printed flyers notifying the sophomore class of the date and place of the picnic, and these flyers, containing drawings of beer mugs, were prominently displayed across the campus. Also, the internal regulations of the College prohibited the use of intoxicants by students under the age of twenty-one years.

Thus the College, by its own regulations, recognized the inherent danger in the use of alcohol by immature students.

In essence, the College urges that it cannot be negligent in this fact situation because it had no duty to the plaintiff to supervise the sophomore class picnic at an off-campus location. However, an educational institution may be held liable for negligence in its supervision of extracurricular activities. In *Chappel v. Franklin Pierce School District, No. 402,* 71 Wash.2d 17, 426 P.2d 471 (1967), the duty of due care in supervising extracurricular activities was applied to a Key Club initiation. In *Chappel,* the court reversed a dismissal of plaintiff's case, holding that evidence of negligence in supervising off-campus activities warranted a submission of the negligence issue to a jury. There is a close similarity between the evidence in *Chappel* and the facts of the case at bar. In both cases the faculty advisor helped plan the event but failed to attend or arrange for a properly advised substitute. Also, in both cases the activity was contrary to the school's own regulations. In any event, the College owes a duty to use due care under the circumstances to prevent an unreasonable risk of harm to sophomores who attend a class function. Restatement (Second) of Torts, §§ 282 and 283 (1965) provide:

§ 282. Negligence Defined

In the Restatement of this Subject, negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. It does not include conduct recklessly disregardful of an interest of others.

§ 283. Conduct of a Reasonable Man: The Standard

Unless the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable man under like circumstances.

I submitted this case to the jury on the above concept. The College was permitted to argue to the jury that it was not negligent because it was powerless to control the habits of college sophomores in regard to drinking beer. The jury rejected the College's defense that it acted in a reasonable manner under the circumstances. It should be noted that the College's liability is predicated on the concept of want of due care which a reasonable man would exercise under the circumstances. The plaintiffs do not contend that the College is liable for any violation of the Pennsylvania liquor code. *See Manning v. Andy,* 454 Pa. 237, 310 A.2d 75 (1973).

The College claims that it was reversible error to refuse to admit into evidence a topographic map of the intersection of Union Street and Harvey Avenue. I excluded the map as evidence because it was not listed as a pretrial exhibit. On the surface it would seem that if error was made in regard to this evidentiary ruling, it was harmless because the jury found the Borough of Doylestown jointly liable. Apparently, the College contends that the topographic map would have emphasized the magnitude of the dips better than the photographs which were introduced into evidence. However, even if the two-dimensional photographs did not adequately describe the size of the dips, the testimony of others, which emphasized the seriousness of this condition in the Borough, surely did.

The evidence showed that Sunny knew or should have known that it was supplying beer to persons under the age of twenty-one years. Although a sophomore over twenty-one years of age tendered the class's check to Sunny, class members under twenty-one were present when the beer was purchased. Consequently, if the consumption of those alcoholic beverages by Rawlings was a substantial factor in causing the accident, then Sunny is liable to the plaintiffs. *See* 47 P.S. § 4–493. The issue of knowledge on the part of Sunny was fairly tried to the jury and no trial error has been called to my attention other than disagreement with the conclusion of the jury that Sunny knew or should have known that the sophomores at Delaware Valley College in the spring of 1975 were generally under the age of twenty-one years. Sunny, of course, disputes that there was sufficient evidence

to justify the jury's conclusion that the consumption of alcohol was a substantial factor in causing the accident but that issue has been resolved in favor of the plaintiffs both by the jury and by the analysis set forth above. Therefore, the motions of the College and Sunny for judgment notwithstanding the verdict or for a new trial will be denied.

### III. THE LIABILITY OF THE BOROUGH

■ The Borough acknowledges it has a legal duty to maintain its streets in a reasonably safe condition and that a jury could have found a breach of this duty from the evidence presented. In its motion for judgment notwithstanding the verdict the Borough contends that the negligence of the driver along with the negligence of the College and Sunny constituted a superseding intervening cause as a matter of law. The Borough emphasizes that Rawlings had driven over the dips on Union Street some fifteen times before the accident, had observed signs warning of the dips on prior occasions, had bottomed out the first time he crossed the intersection, and thereafter (except for the accident in question) had slowed down to avoid any difficulties. The Borough is wrong in its contention, and its motion for judgment notwithstanding the verdict will be denied.

■ The jury was charged in terms of Restatement (Second) of Torts § 447 (1965). Section 447 requires the factfinder to determine if there was an intervening act that should have been foreseen by the original tortfeasor in the exercise of reasonable care and if so, whether the intervening act was an expected response to the dangerous situation created by the original tortfeasor or whether it could be classified as extraordinary and unanticipated. The law of Pennsylvania approves of and follows § 447. *Miller v. Checker Yellow Cab Co.,* 465 Pa. 82, 348 A.2d 128 (1975). There, Justice Nix

held that the issues presented by § 447 are factual in nature and should be left to the jury to decide. *See also Pushnik v. Winky's Drive-In Restaurants, Inc.,* 242 Pa.Super. 323, 363 A.2d 1291 (1976). Furthermore, the Restatement (Second) of Torts § 453 (1965), comment b, provides further support for leaving this issue to the jury:

> If, however, the negligent character of the third person's intervening act or the reasonable foreseeability of its being done . . . is a factor in determining whether the intervening act relieves the actor from liability of his antecedent negligence, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was negligent or foreseeable, the question should be left to the jury.

Finally, the distinction between passive negligence and active negligence is no longer a distinction with significance in Pennsylvania. *Flickinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973). For the foregoing reasons the motion of the Borough for judgment notwithstanding the verdict will be denied.

■ The Borough has also moved for a new trial contending that reversible error was committed in three respects. First, the Borough maintains that the assumption of risk defense should have been submitted to the jury in a separate special interrogatory. The court did submit to the jury the issue of whether or not the plaintiff was contributorily negligent in accepting a ride in defendant's automobile considering the condition of the driver. The jury found no contributory negligence. The Borough, pointing to the conceptual differences between the defenses of assumption of risk and contributory negligence, argues that the defenses are distinct and should have been covered in two separate interrogatories to the jury.[6] The point the Borough makes in this regard is that the jury could have rejected the contributory negligence defense

---

**6.** In the assumption of risk defense a plaintiff's perception of the danger is tested subjectively in regard to his actual knowledge as opposed to the objective standard of the reasonably pru-

dent man used in the contributory negligence defense. *Dorsey v. Yoder Company,* 331 F.Supp. 753, 765 (E.D.Pa.1971), *aff'd mem.,* 474 F.2d 1339 (3d Cir. 1973).

on the ground that it was proper under the objective reasonable man standard for the plaintiff to accept a ride with Rawlings, even though he knew Rawlings was under the influence of alcohol, because there was no other reasonable way to get back to the campus. According to the Borough, however, the same conduct, judged by the subjective standard of the assumption of risk defense, could create a bar to plaintiff's cause of action. In my view, in this factual context the defenses of contributory negligence and voluntary assumption of risk merge into one defense. *See Reedy v. Brown,* 16 Pa.D. & C.2d 494 (1958), *aff'd* 395 Pa. 382, 150 A.2d 707 (1959). In that portion of the charge dealing with contributory negligence, that defense was expanded through the use of the following language:

A plaintiff is barred from recovering under a theory of negligence if it is proven that he, with appreciation and knowledge of an obvious danger purposely elects to abandon a position of relative safety and chooses to reposition himself in a place of obvious danger and by reason of that repositioning, is injured.

Where a person voluntarily rides in a motor vehicle with an operator whom he knows to be intoxicated, you may find he took the risk of the operator's condition and may not recover for any injuries resulting from the operator's negligence.

In *Joyce v. Quinn,* 204 Pa.Super. 580, 205 A.2d 611 (1964), the plaintiff-passenger rode with an operator who had only a learner's permit. The court remanded for a new trial holding the defendant could present evidence that the plaintiff was contributorily negligent in accepting a ride from an operator who he knew or should have known was unskilled. However, Judge Montgomery recommended that this defense be expressed in terms of contributory negligence and not assumption of risk. The same principle applies to the case at bar.

The Borough also contends that it was reversible error for the court to permit Catherine Rawlings, now the wife of the defendant driver, to testify about the non-existence of warning signs on the day after the accident. It should be kept in mind that an issue in the case was the existence or nonexistence of signs warning drivers on Union Street proceeding in a westerly direction about the dip at the intersection of Harvey Avenue. Mrs. Catherine Rawlings had been listed as a witness on behalf of the defendant Bruce D. Rawlings. She was not listed as a witness on behalf of the plaintiff. Nevertheless, in the exercise of my discretion, I permitted the plaintiff to call her to testify about the nonexistence of a warning sign at the intersection in question. The Borough, however, cannot be prejudiced by my ruling because it had prior notice of the existence of this witness and therefore could have taken appropriate steps to counteract any testimony she might give against the interests of the Borough. Also, the recent case of *DeMarines v. KLM,* 580 F.2d 1193, 1201–02 (3d Cir. 1978), supports my decision to permit her to testify. Even if my ruling was in error, it was harmless because Rawlings had actual knowledge of the condition of the dips on Union Street inasmuch as he admitted he had previously driven over that street approximately fifteen times. Furthermore, a number of witnesses testified that even though they knew of the existence of the dips, their vehicles would occasionally "bottom out" when they crossed the dips.

Finally, the Borough maintains that it was reversible error not to submit a separate jury interrogatory on the issue of superseding cause. In my view, the issue of proximate cause encompasses superseding cause and is best dealt with in one jury interrogatory. It should also be noted that no exceptions were taken in regard to the instructions to the jury on the concept of superseding cause.

The motion of the Borough of Doylestown for a new trial will be denied.

## IV. THE DAMAGE ISSUES

Bradshaw seeks a new trial limited to damages only. At a side bar conference prior to the testimony of an economist, I held, in reliance on *Vizzini v. Ford Motor Company,* 569 F.2d 754 (3d Cir. 1977), that

the economist would not be allowed to support his testimony by reference to generalized inflationary trends or increased productivity. The plaintiff's attorney was permitted to make an offer of proof on this subject. The proffered testimony would have shown a six percent increase in prices, costs and wages, for the foreseeable future. On the basis of *Vizzini* I rejected this testimony. Plaintiff's argument that I was in error should be addressed to the Court of Appeals because I must follow the holdings of *Vizzini*.[7]

■ Plaintiff also complains that it was improper to give the jury the *Domeracki* charge on the effect of federal income taxes.[8] The jury was charged:

> I charge you that your award in favor of the plaintiffs will not be subject to Federal Income Taxes and you should not therefore either add or subtract taxes in fixing the amount of your award.

This instruction was correct and in accordance with the applicable precedent.

In the damage phase of the case the jury was instructed that future medical expenses and the future cost of attendants and housekeepers for the plaintiff should be reduced to present value. The plaintiffs took no specific exception to that portion of the jury instructions. The plaintiff now contends that *Yost v. West Penn Railways Co.,* 336 Pa. 407, 9 A.2d 368 (1939) and *Renner v. Sentle,* 151 Pa.Super. 231, 30 A.2d 220 (1943), interdict the reduction to present value of such expenses.

■ Although those cases do state that damages for expected medical expense are not to be reduced to present worth, those cases arise in a different factual context. Here, over his life expectancy, the plaintiff anticipated $1,000 per year of medical expenses and very substantial annual expenses for nursing attendants and housekeepers. The jury, after making the present value calculations, awarded plaintiff $49,477 for future medical expenses and

$334,965 for future expenses for nursing care and full-time attendants. Applying the concept of full compensation, there is no reason why these expenses, which will accrue yearly over plaintiff's life expectancy, should not be reduced to present value. The funds presently recovered can be invested and the interest applied to the future expenses. Neither of the Pennsylvania cases cited by the plaintiff analyze or give any reason for not reducing future medical expense and future nursing care to present value. In fact, those cases seem to deal with perhaps one surgical procedure to be paid for in the immediate future. Consequently, I am unwilling to apply *Yost* and *Renner* to this factual context. *See also Frankel v. Heym,* 466 F.2d 1226, 1229 (3d Cir. 1972).

■ Carol and Alfred Cuneo, the mother and stepfather of Bradshaw, urge that the $5,000 which the jury awarded to each of them is insufficient and that a new trial limited to an ascertainment of the damages they suffered is in order. Although there was evidence the Cuneos had incurred more than $10,000 in total losses as a result of the injury to Bradshaw, it is solely within the jury's province to evaluate the damage testimony and to calculate damages based on the evidence they find acceptable. The overall verdict is fair to the plaintiffs and I am unwilling to second guess the jury on this factual determination.

## V.  PLAINTIFF'S AGREEMENT WITH DEFENDANT RAWLINGS

■ After the trial commenced but before verdict, plaintiffs and Rawlings entered into an agreement which provided that Rawlings would not actively contest liability and would pay any verdict entered against him up to the $100,000 limitation in his liability insurance policy. In exchange, the plaintiffs agreed that upon receipt of

---

7.  The Court of Appeals has recently approved the holding of *Vizzini. Heckman v. Federal Press Co.,* 587 F.2d 612 (3d Cir. 1978).

8.  *Domeracki v. Humble Oil & Refining Co.,* 443 F.2d 1245 (3d Cir.), *cert. denied,* 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971).

such payment they would mark the docket satisfied as to Rawlings. During the trial and in the post-trial proceedings the other parties contended that this agreement amounted to a release in exchange for $100,000 and therefore under the Uniform Contribution Among Joint Tortfeasors Act the liability of the other defendants should be reduced prorata. At the oral argument on the posttrial motions the plaintiffs' attorney and the attorney for Rawlings announced that a new agreement had been reached which cancelled the original agreement and therefore all pending motions by Rawlings were to be withdrawn. It should be kept in mind that when the defendants raised the contribution among joint tortfeasors issue, the plaintiffs took the position that the original agreement had been breached by the defendant Rawlings and was unenforceable. In my view the original agreement was breached by defendant Rawlings in that his attorney moved for a directed verdict pursuant to Fed.R.Civ.P. 50 at the conclusion of plaintiff's case. This motion was well taken because the plaintiff, at that time, had not established diversity of citizenship between the plaintiff and Rawlings. I permitted the record to be opened to correct that jurisdictional deficiency. Therefore, in light of the fact that the first agreement was breached, no release of defendant Rawlings was effectuated by that agreement.

As far as the second agreement is concerned, I find nothing in it which would require a prorata release of the remaining defendants.

## VI. CONCLUSION

All of the post-trial motions will be denied.