[No. 5866–2–III. Division Three. January 15, 1985.]

CLAUDINE RHEA, *Individually and as Personal Representative, Appellant,* v. GRANDVIEW SCHOOL DISTRICT No. JT 116–200, *Respondent.*

---

*Rickey C. Kimbrough,* for appellant.

*H. Roland Hofstedt, Suzanne E. Oliver,* and *Merrick, Hofstedt & Lindsey,* for respondent.

THOMPSON, J.—Claudine Rhea appeals the summary judgment dismissal of her survival and wrongful death action against Grandview School District.

The Grandview High School senior class held a meeting in the school gymnasium during sixth period on a school day prior to graduation in 1979. When their faculty adviser arrived, the meeting was already in progress and the stu-

dents were planning an off–campus party to be held on June 4, 1979, a "release day" authorized for all graduating seniors. Upon hearing their plans to obtain beer for the event, the adviser admonished the students and reported the incident to the principal.

On June 4, certain members of the class attended the party at a Columbia River location east of the Tri–Cities. No school district employees were present. Bambi Judkins, 18 years old, was in attendance and allegedly joined others in the consumption of alcoholic beverages at the party. While driving her car home, she was killed instantly in a car–truck collision and at the time of her death Ms. Judkins had a blood alcohol level of .13 percent. Claudine Rhea, Ms. Judkins' natural mother, brought a negligence action against the District. The trial court granted the District's motion for summary judgment. We affirm.

A motion for summary judgment under CR 56(c) can be granted only if, after considering all facts and reasonable inferences from the facts in the light most favorable to the nonmoving party, the court finds there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982) (citing *Barrie v. Hosts of Am., Inc.,* 94 Wn.2d 640, 642, 618 P.2d 96 (1980), and *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81 Wn.2d 528, 530, 503 P.2d 108 (1972)). In determining whether the order of summary judgment is correct, we must engage in the same inquiry as the trial court. *Zehring v. Bellevue,* 99 Wn.2d 488, 493, 663 P.2d 823 (1983), *vacated on other grounds on reh'g,* 103 Wn.2d 588, 694 P.2d 638 (1985).

The first issue is whether the District breached a duty to Ms. Judkins and can be held liable for negligence. The common law rule of tort immunity of school districts and their employees was abrogated in Washington by RCW 4.08.120:

An action may be maintained against a county or other of the public corporations mentioned or described in

RCW 4.08.110 [any county, incorporated town, school district or other public corporation of like character], either upon a contract made by such county, or other public corporation in its corporate character and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation.

The general effect of that statute is to render public corporations, school districts included, liable for their tortious acts or omissions according to the normal rules of tort law. *Chapman v. State*, 6 Wn. App. 316, 321, 492 P.2d 607 (1972).

■ A school district owes a duty to its pupils to "anticipate reasonably foreseeable dangers and to take precautions protecting the children in its custody from such dangers." *Carabba v. Anacortes Sch. Dist. 103*, 72 Wn.2d 939, 955, 435 P.2d 936 (1967) (quoting *Tardiff v. Shoreline Sch. Dist.*, 68 Wn.2d 164, 170, 411 P.2d 889 (1966)); *see also Briscoe v. School Dist. 123*, 32 Wn.2d 353, 201 P.2d 697 (1949). Even when students are not in "custody" or compulsory attendance, *Carabba*, at 956–57, liability may nevertheless attach when schools supervise and exercise control over extracurricular activities. *Sherwood v. Moxee Sch. Dist. 90*, 58 Wn.2d 351, 363 P.2d 138 (1961).

When a school district's defense is that the off–premises activity was ultra vires, *Coates v. Tacoma Sch. Dist. 10*, 55 Wn.2d 392, 395–96, 347 P.2d 1093 (1960); *Juntila v. Everett Sch. Dist. 24*, 178 Wash. 637, 35 P.2d 78 (1934), the question becomes whether a tort was committed within the scope of the school's authority. *Chappel v. Franklin Pierce Sch. Dist. 402*, 71 Wn.2d 17, 20–24, 426 P.2d 471 (1967); *Sherwood v. Moxee Sch. Dist. 90, supra* at 360 (Hill, J., specially concurring). *Chappel* lists 10 factors in this determination[1] and states that the

---

[1] "(a) the school district, through the school administrative staff, did accept, authorize and sponsor the Key Club as an approved extracurricular student activity; (b) a faculty advisor was assigned to the club who regularly attended and supervised its meetings and aided in planning its activities; (c) the club, with its scholastic requirements and worthy projects, possessed educational and cultural

nexus between an assertion of the school district's authority and potential tort liability springs from the exercise or assumption of control and supervision over the organization and its activities by appropriate agents of the school district.

Where . . . the evidence reveals that educational and cultural values inhere in the normal activities of an extracurricular student body organization, and the school administration has assumed supervisory responsibility over the organization *which, in turn, extends to tacit approval of and faculty participation in planning and supervising* . . ., the school district cannot relieve itself of potential tort liability . . .

(Italics ours.) *Chappel,* at 24.

Here, no District employee or agent was present at the party or participated in any way with its planning. In fact, the faculty adviser expressly registered her disapproval of the students' plans. Nor can it be said the District's nonaction constitutes "tacit approval and faculty participation" in the activity. *See Bradshaw v. Rawlings,* 612 F.2d 135, 137, 140 (3d Cir.), *aff'g in part, rev'g in part* 464 F. Supp. 175 (E.D. Pa. 1979). Even when viewed in the light most favorable to the nonmoving party, it cannot be said that mere knowledge by the faculty adviser and principal brought the senior party within the scope of the District's authority. *See Bradshaw v. Rawlings, supra.*

Mrs. Rhea next contends the District failed to comply with RCW 28A.58.754(5) and conducted an unauthorized

values; (d) the school administration assumed and asserted authority over initiation activities in that it set aside a time and place for such, and forbid the 'hazing' type ceremony; (e) the faculty advisor assigned to the club was either not properly advised of the school's regulatory measures or such rules were indifferently enforced; (f) the faculty advisor attended and supervised previous initiations away from the school campus at which stunts similar to the one here involved were executed, and participated in planning the instant initiation; (g) the existence of a swimming pool at the residence to be used as the site of the instant initiation was known and its potential part in the ceremony discussed at the planning meeting; (h) physical injuries are foreseeable when unsupervised student initiation ceremonies involve physical ordeal on the part of the initiates; (i) the designated faculty advisor failed to attend and supervise the initiation or provide a properly advised and informed substitute; and (j) lack of appropriate supervision proximately caused the injuries complained of." *Chappel,* at 22.

release of students on June 4, 1979.

The proviso to RCW 28A.58.754(5) states in part:

[A] school district may schedule the last five school days of the one hundred and eighty day school year for noninstructional purposes in the case of students who are graduating from high school, including, but not limited to, the observance of graduation and early release from school upon the request of a student, and all such students may be claimed as a full time equivalent student to the extent they could otherwise have been so claimed . . .

■■ Mrs. Rhea contends the statute allows nonattendance in only two instances: (1) a scheduled noninstructional activity for graduating students for the observance of graduation; and (2) early release at the request of the student. This statutory interpretation is too narrow, given the express "including, but not limited to" language which clearly allows District discretion in approving other opportunities for noninstructional release with or without individual student request.

The Attorney General has expressed the opinion that the Legislature intended the proviso to vest districts with discretion to determine what attendance requirements, if any, would be imposed on graduating seniors and to allow districts to conduct graduation exercises, "seniors' days", etc., within the 5–day period without losing state funding based on the 180–day full–time equivalent requirement (AGO 20 (1981)). Although not controlling, the Attorney General's construction placed upon an ambiguous statute is entitled to considerable weight. *Bellevue Fire Fighters Local 1604 v. Bellevue*, 100 Wn.2d 748, 750 n.1, 675 P.2d 592 (1984).

We find the language in the statute that allows release at a student's request is only an example. Although on June 4, the District was able to claim the released students as full–time equivalent students for purposes of state funding, it was also authorized to totally release them from custody and control under the "noninstructional purposes" provision of RCW 28A.58.754(5).

Finally, Mrs. Rhea contends the District should be held

liable as the furnisher of intoxicants based on the special relationship between the District and the student.

Since the repeal of the Dram Shop Act in 1955, Washington has adopted the general common law rule of nonliability for furnishing intoxicants to an able–bodied person while recognizing the exceptions to the rule for (1) obviously intoxicated persons, (2) persons in a state of helplessness, or (3) persons in a special relationship to the furnisher of intoxicants. *Wilson v. Steinbach*, 98 Wn.2d 434, 438, 656 P.2d 1030 (1982) (citing *Halvorson v. Birchfield Boiler, Inc.*, 76 Wn.2d 759, 762, 458 P.2d 897 (1969)).

The elements necessary to state a cause of action against a supplier of alcohol for alcohol–related injuries differ according to whether the alcohol is supplied in a social or commercial context. *See Young v. Caravan Corp.*, 99 Wn.2d 655, 663 P.2d 834 (1983); *Torres v. Salty Sea Days, Inc.*, 36 Wn. App. 668, 670 n.1, 676 P.2d 512 (1984).

Here, accepting Mrs. Rhea's allegations as verities, the mere knowledge of the planned activities by the adviser and principal will not alone constitute that requisite "special relationship" that would make the District a furnisher of alcoholic beverages in this purely social setting. *See Halvorson*, at 764–65. There is nothing in this record that would indicate the District participated directly or indirectly in furnishing intoxicants to the seniors attending the June 4 party. The claim lacks substance.

We affirm.

Munson, J., and Hopkins, J. Pro Tem., concur.