

This opinion was filed for record

at 8 a.m. on August 9, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHELE L. ANDERSON, a single person, individually and as the Administrator of the ESTATE OF SHEILA M. ROSENBERG, | ) ) ) ) | No. 93977-2 |
| Petitioner, | ) ) | En Banc |
| v. | ) ) | Filed ___AUG 0 9 2018___. |
| SOAP LAKE SCHOOL DISTRICT, GRANT COUNTY, GRANT COUNTY SHERIFF'S DEPARTMENT, and CORPORAL ALLAN SLEEPER, and JOHN DOE(S), | ) ) ) ) ) ) | |
| Respondents. | ) | |

WIGGINS, J.—Michele Anderson suffered the tragic and heartbreaking loss of her daughter, Sheila Rosenberg, following the irresponsible actions of Rosenberg's high school basketball coach, Igor Lukashevich. Lukashevich invited Rosenberg to his home where he poured and drank shots of vodka with her. Shortly after leaving Lukashevich's home, Rosenberg was killed along with her boyfriend, Pavel Turchik, in a car accident. Anderson marshals a number of claims against Lukashevich's employer, Soap Lake School District (Soap Lake or the district). But she fails to marshal sufficient evidence to support her claims. We conclude that the trial court properly granted summary judgment to Soap Lake, and we affirm the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY[1]

### I. The Accident

Rosenberg was killed in a single-car accident after leaving the home of her high school basketball coach, Lukashevich. The evening before the accident, Rosenberg and her boyfriend, Turchik, texted one another about meeting at Lukashevich's house. Turchik texted Rosenberg that he was at the school playing basketball and then planned on going over to Lukashevich's home. Rosenberg replied, "Ha nice!! What's at [I]gors[2]? . . . Oh yeah my ice[ ]cream! L[aughing] m[y] a[ss] o[ff]." Rosenberg then asked Turchik, "What [a]re you guys doing there?" Turchik replied, "We[']re getting wasted th[a]ts wh[a]t we[']re doin[g]!"

A couple of hours later, Lukashevich texted Rosenberg, asking her to come to his house. He texted, "Got your ice cream." Rosenberg replied, "Did you?!" Lukashevich answered, "Yea bring [V]ictoria[3] and come over." Rosenberg then responded, "Kkk!!!! Will do!"

Before Rosenberg went over to Lukashevich's house, she and Turchik met up at another party, where they both drank alcohol. Rosenberg arrived at this first party with a

---

[1] Since this case is a review of a grant of summary judgment, "we consider all facts and make all reasonable factual inferences in the light most favorable to the nonmoving party," here, Anderson. *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). As a result, the following facts are presented according to Anderson's description of events.

[2] "Igor" refers to Lukashevich.

[3] Anderson did not present evidence about the identity of "Victoria."

"half-gallon of Monarch Vodka." Lukashevich was also at the party drinking beer. After a noise complaint, the "cops" came to the residence and told the partygoers to quiet down.[4]

Rosenberg and Turchik left that party together and drove to Lukashevich's home. When they arrived, Ruby and Catrina Langley[5] were already at the house. Both Ruby and Catrina had lived in the city of Soap Lake and knew Rosenberg and Turchik. Thus, of the four people at Lukashevich's house—Turchik, Ruby, Catrina, and Rosenberg— Rosenberg was the sole member of the Soap Lake girls' basketball team present.

Ruby and Catrina noticed that Rosenberg was visibly intoxicated when she arrived at Lukashevich's home after midnight. Lukashevich was also drinking at his house. While Ruby and Catrina were there, they saw Lukashevich drink a beer and vodka mixed with cranberry juice. After Rosenberg arrived, she and Ruby ate ice cream from Lukashevich's freezer. Lukashevich also poured two shots of vodka, one for himself and one for Turchik. Lukashevich, Turchik, and Rosenberg then each drank a shot together.[6] Turchik and Rosenberg left Lukashevich's house in Turchik's car shortly thereafter.

Turchik was driving 99 miles per hour when he left the road and hit a driveway culvert. The vehicle rolled several times, ejecting both Rosenberg and Turchik. Rosenberg was killed immediately; Turchik died a few days later. At the time, Turchik had an estimated blood alcohol content of 0.175, and Rosenberg had an estimated blood alcohol content of 0.20. Both were minors.

---

[4] It is disputed whether a police officer visited the party. The deputy who allegedly came to the residence denies having done so. However, the owner of the house and host of the party stated that "cops" came to the house and told the occupants to quiet down because of a noise complaint.

[5] Ruby was 19 years old and Catrina was 20 years old.

[6] According to at least one account, Rosenberg's shot was already poured when she arrived.

II.   Lukashevich's Hiring, Training, and Supervision

Lukashevich was hired by Soap Lake to coach the high school girls' varsity basketball team. Lukashevich had no college degree, no certifications in teaching or education, and no child development or physical education training. His main qualifications were that he had played basketball for six years in middle school and high school and lived in the city of Soap Lake. He had also previously worked as assistant coach to the junior varsity boys' basketball team. He had attended a general training for first aid and CPR (cardiopulmonary resuscitation). At the time, Lukashevich was 22 years old. With these modest credentials, Lukashevich met the necessary qualifications for high school coaches listed in the Washington Interscholastic Activities Association's (WIAA)[7] handbook:

The Coach Must Satisfy the Following Requirements:

1.     Be a high school graduate or have completed a graduation equivalency diploma (GED) program, except as in d. below.

    a.     Be at least 21 years of age to be a head coach.

    b.   ·  Be at least 19 years of age to be an assistant coach except as in d. below.

    c.     Hold a valid current First Aid Certification and "hands-on" CPR Certification or be enrolled in a First Aid Certification and "hands-on" CPR Course.

Soap Lake required Lukashevich to list any criminal history, and he indicated that he had never been convicted of or charged with a crime. Soap Lake also submitted

---

[7] The WIAA is a private, nonprofit organization that promulgates rules for athletics programs in 800 member high schools and middle/junior high schools across Washington. [7] *See About Us*, WASH. INTERSCHOLASTIC ACTIVITIES ASS'N, http://www.wiaa.com/subcontent.aspx? SecID=283 (last visited Aug. 1, 2018).

Lukashevich's fingerprints for a background check. Lukashevich passed both the Washington State Patrol's and Federal Bureau of Investigation's checks.

Before the start of the basketball season, Kevin Kemp, the school principal and athletic director, and Lukashevich's direct supervisor, met individually with Lukashevich. They discussed uniform and equipment inventory. Kemp also discussed the importance of creating a positive and supportive culture.

Kemp did not remember giving a copy of the district employee handbook to Lukashevich and did not review the information in the handbook with him. To ensure that Lukashevich complied with the handbook policies, Kemp occasionally made impromptu visits to basketball practices.

In addition to the handbook, the school also required review of and agreement to the Soap Lake "Activities Code." Before student athletes could participate in school-sponsored sporting events, they and their parents or guardians were required to sign and return the Activities Code. The Activities Code prohibited consumption of alcohol and attendance at events where alcohol is present:

- Participants may not possess, imbibe, or ingest, alcohol in the form of beer, wine, liquors, or distilled spirits.

- Participants may not attend an event where alcohol is present.

In addition to the Activities Code, the WIAA also requires member schools, like Soap Lake, to adopt regulations discouraging student use of alcohol:

18.24.0 **USE OF ILLEGAL SUBSTANCES** – School and WIAA rules and regulations are intended to discourage the use of alcohol . . . .

18.24.1 **Alcohol and tobacco** – Each WIAA member school shall adopt reasonable rules and regulations pertaining to the use of alcohol or tobacco products that are specific to the middle or high school levels.

Kemp did not remember reviewing these policies prohibiting student consumption of alcohol with Lukashevich. Instead, to discuss the Activities Code, Kemp held an annual meeting with all the coaches at the beginning of the sports season, where he went over inventory, transportation, paper work, and practice schedules. He did not review the Activities Code item by item, instead focusing on academic excellence and attendance.

Before the accident, Kemp knew that Lukashevich had once asked Kemp for permission to take the team out for pizza in Ephrata. Kemp knew of no school policy about such an event and said that Lukashevich would not need to seek authorization to meet his students for a team party or to personally pay for a pizza party. Kemp also acknowledged that Lukashevich "had the luxury" to treat students to an ice cream social to reward and motivate their performance during basketball games and practices.

After Rosenberg's and Turchik's deaths, Kemp recommended that Soap Lake not renew Lukashevich's coaching contract. Kemp stated that after the accident he felt that it was best to "bring in somebody new to get a fresh start." The district also received information that Lukashevich's name "was brought forth during the investigation" of the students' deaths, and it did not renew Lukashevich's position.

III.  Legal Challenges

Anderson, individually and as administrator of Rosenberg's estate, sued Soap Lake.[8] Anderson brought claims of negligent hiring and retention, negligent training and supervision, negligent protection of a student, vicarious liability, and breach of contract. At the trial court, Anderson twice moved for a continuance to gather more evidence, including the deposition of Kemp. The trial court granted both continuances to allow the case to be determined on the merits. However, because Anderson still failed to present sufficient evidence of her claims against Soap Lake after the continuances, the trial court granted summary judgment in favor of the district.

The trial court concluded that there was no evidence that differences in the school's hiring or supervision techniques would have prevented Rosenberg's death. The court also reasoned that the event at Lukashevich's house was not a school event, that Lukashevich was a "rogue teacher" acting "contrary to his authority and . . . unrelated to his work," and that there was no nexus to the district. Finally, the trial court found that the Activities Code was not a legal contract giving rise to a heightened duty to monitor and supervise student athletes while they were away from campus.

Anderson appealed, but the Court of Appeals affirmed the trial court in an unpublished decision. *See Anderson v. Soap Lake Sch. Dist.*, No. 33889-4-III, slip op. at 1 (Wash. Ct. App. Nov. 22, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/338894_unp.pdf. The Court of Appeals held that

---

[8] Anderson also sued Grant County, Grant County Sheriff's Office, and the police officer who allegedly responded to the noise complaint about the first party that Rosenberg attended on the night of the accident. These parties were dismissed on summary judgment and are not involved in this appeal.

7

Soap Lake was not negligent in its hiring, supervision, or training of Lukashevich. *Id.* at 6. It further held that the gathering at Lukashevich's home "was so distant in time and place from any normal school activity that it was outside the district's authority," thus precluding any vicarious liability. *Id.* at 4. Finally, the Court of Appeals concluded that the Activities Code was not a legal contract and that the school district could not be held liable for any "breach" of that agreement. *Id.* at 5.

Anderson filed a petition for review of the Court of Appeals decision with this court, which we granted.

## STANDARD OF REVIEW

"We review a trial court's grant of summary judgment de novo." *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see also* CR 56(c).

## ANALYSIS

We affirm. At one level, it may seem that Lukashevich's actions were so extremely indifferent to the risk of injury to Rosenberg that someone must be liable for Anderson's claims. But Anderson did not choose to bring an action against Lukashevich. Instead, Anderson brought a number of claims against Soap Lake, each of which has its own set of elements that must be proved before the school district can be held liable for the actions of its employees. We first examine each negligence theory raised by Anderson and then explore whether Soap Lake is vicariously liable for Anderson's losses. We conclude by addressing Anderson's breach of contract claim.

8

Having carefully reviewed each of Anderson's claims, we conclude that Anderson failed to present genuine issues of material fact, and Soap Lake is entitled to judgment as a matter of law. Consequently, we hold that the trial court properly granted summary judgment on all of Anderson's claims.

I.   Evidence Admissibility

Soap Lake challenges for the first time the admissibility of the Douglas Phelps[9] declaration, the Phelps supplemental declaration, and the Anderson declaration. Soap Lake argues that these declarations are inadmissible because they are unauthenticated and/or contain hearsay. "[E]vidence submitted in opposition to summary judgment must be admissible. Unauthenticated or hearsay evidence does not suffice." *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 141, 331 P.3d 40 (2014) (citation omitted).

However, when reviewing an order granting a motion for summary judgment we "will consider only evidence and *issues* called to the attention of the trial court." RAP 9.12 (emphasis added). At the trial court, Soap Lake objected only to the admission of the police report. Thus, it did not call the admissibility of any other evidence "to the attention of the trial court." *Id.* As a result, we consider the admissibility of the police report only.[10]

---

[9] Douglas Phelps is Anderson's attorney.

[10] Soap Lake also argues that because Anderson did not resubmit the Phelps declaration and the Anderson Declaration in response to Soap Lake's motion for summary judgment, we may not consider them under RAP 9.12. However, in the order granting Soap Lake's motion for summary judgment, the trial court indicated that it considered the "Declaration of Doug Phelps, with attachments," the "Declaration of Doug Phelps (Supp), with attachments," and "the entire court file in reaching this decision." Thus, it is clear that the declarations were brought to the "attention of the trial court," and that the trial court considered them when ruling on Soap Lake's motion for summary judgment. RAP 9.12. Consequently, RAP 9.12 does not preclude us from considering the declarations.

*Id.* While Soap Lake is correct that the police report is inadmissible,[11] most of the facts contained in the police report are elsewhere in the record.[12] Thus, we confine our analysis to the facts contained elsewhere in the record.

## II. Negligence

Anderson makes three distinct negligence claims. First, she argues that Soap Lake negligently hired and/or retained Lukashevich to coach the high school girls' basketball team. Second, she argues that Soap Lake negligently trained and/or supervised Lukashevich while he was coach. Finally, she argues that Soap Lake was negligent in failing to protect Rosenberg from foreseeable harm. We conclude that Anderson failed to present any genuine issues of material fact regarding these claims. Consequently, Soap Lake is entitled to judgment as a matter of law. Thus, we hold that the grant of summary judgment on Anderson's negligence claims was proper.

---

[11] This court has held that police reports are inadmissible hearsay. "Police reports are a subjective summary of the officer's investigation, rendering them inadmissible." *In re Det. of Coe*, 175 Wn.2d 482, 505, 286 P.3d 29 (2012). "Moreover, the victims' statements that make up the reports are an additional level of hearsay." *Id.* In addition to their hearsay nature, police reports are inadmissible without proper authentication. Police reports cannot be properly authenticated unless they are accompanied by the seal of a public officer, a legal custodian's certification, or an affidavit signed by someone with personal knowledge, such as the police officer. *See Burmeister v. State Farm Ins. Co.*, 92 Wn. App. 359, 367-68, 966 P.2d 921 (1998). Here, Phelps did not submit the police report with a public officer's seal or with an affidavit of the police officer who wrote it. Instead, Phelps personally attested to its authenticity. This was insufficient to authenticate the document. *See id.* at 367 (holding that an attorney "cannot testify to the authenticity or the contents of [a] police report based on personal knowledge"). Thus, the police report was inadmissible under Rule of Evidence (ER) 901. *See* ER 802 ("Hearsay is not admissible except as provided by these rules, by other court rules, or by statute."); ER 901(a) (requiring authentication or identification as "a condition precedent to admissibility").

[12] In addition, the trial court deemed the facts contained in the police report undisputed. It based this conclusion on the fact that Soap Lake stated more than once that "[t]he facts are not in dispute."

*A. Negligent Hiring and Retention*

This court has not yet adopted a test for negligent hiring and/or retention of an employee. We now adopt the test used by the Courts of Appeals: to hold an employer liable for negligently hiring or retaining an employee who is incompetent or unfit, a plaintiff must show that the employer had knowledge of the employee's unfitness or failed to exercise reasonable care to discover unfitness before hiring or retaining the employee. *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 43, 747 P.2d 1124 (1987); *see also Carlsen v. Wackenhut Corp.*, 73 Wn. App. 247, 252, 868 P.2d 882 (1994) ("To prove negligent hiring in Washington, the plaintiff must demonstrate that . . . the employer knew or, in the exercise of ordinary care, should have known, of its employee's unfitness at the time of hiring."). This holding parallels the rule in the *Restatement (Second) of Torts* § 307 (Am. Law Inst. 1965): "It is negligence to use an instrumentality, whether a human being or a thing, which the actor knows or should know to be so incompetent, inappropriate, or defective, that its use involves an unreasonable risk of harm to others." The difference between negligent hiring and negligent retention is timing. *Peck v. Siau*, 65 Wn. App. 285, 288, 827 P.2d 1108 (1992). Negligent hiring occurs at the time of hiring, while negligent retention occurs during the course of employment. *Id.*

1. Negligent Hiring

Anderson first argues that Soap Lake was negligent when it hired Lukashevich to be the high school girls' basketball coach. An employer negligently hires an employee when it knew or should have known that the employee was unfit for the position. *Scott*, 50 Wn. App. at 43.

11

For example, in *Carlsen*, the Court of Appeals concluded that a company was potentially liable for negligent hiring when it failed to check the background and references of an employee who performed security functions. 73 Wn. App. at 254, 256-57. Despite the employee's providing incomplete and inconsistent information on his job applications, the employer failed to conduct a background check, which would have revealed the employee's criminal history. *Id.* at 256-57. The employer also did not contact the employee's references to determine if he had a criminal history. *Id.* at 254. Thus, the employer failed to learn of the employee's unfitness because it neglected to more thoroughly check the employee's background. *Id.* at 257.

In contrast, in *Scott*, the Court of Appeals concluded that a school district did not negligently hire a teacher. 50 Wn. App. at 43. The teacher was allegedly involved in a romantic relationship with a student and provided her alcohol. *Id.* at 40-41. However, the parents of the student did not present any evidence suggesting that the teacher had a history that made him unfit to teach at the school. *Id.* at 43. The court also concluded that the hiring process employed by the school was reasonable. *Id.* "Although certain specific questions identified by [the student's parents] were not asked," the court held that the process was sufficient to discover whether an individual was fit to teach at the school. *Id.*

Here, Anderson argues that Soap Lake negligently hired Lukashevich because he was unfit to coach without a college degree, teaching or education certifications, or child development training. Soap Lake knew that Lukashevich did not have a college degree or other teaching certifications. However, Lukashevich met the required qualifications of a high school coach promulgated by the WIAA: he had a high school degree, he was 22

12

years old, and he attended first aid and CPR training. Anderson fails to offer any evidence or theory on how or why Lukashevich's level of education and training constituted unfitness, especially when he met the minimum requirements of the WIAA, a nonprofit organization that governs school athletics in over 800 schools across Washington.[13]

Neither did Anderson present any evidence showing how or why the WIAA's qualifications for high school coaches are deficient. For example, she did not present any evidence about why a college degree is necessary for a high school basketball coach. Nor did she present any evidence on the certifications or training that Lukashevich would have needed to make him fit. Thus, because Lukashevich met the official minimum requirements of the position and Anderson failed to identify additional training and certifications, there is no genuine issue of material fact that Lukashevich was a fit candidate to be hired as the Soap Lake high school girls' basketball coach based on his qualifications.

2. Negligent Retention

Negligent retention "'consists of . . . retaining the employee with knowledge of his unfitness, or of failing to use reasonable care to discover it before . . . retaining him.'" *Peck*, 65 Wn. App. at 288 (quoting *Scott*, 50 Wn. App. at 43). Anderson argues that Soap Lake negligently retained Lukashevich because of his disregard for and violation of school policies regarding students and alcohol. However, there is no evidence that Soap Lake knew or should have known that Lukashevich was unfit in this respect.

---

[13] *See About Us*, WASH. INTERSCHOLASTIC ACTIVITIES ASS'N, http://www.wiaa.com/ subcontent.aspx? SecID=283 (last visited Aug. 1, 2018).

Anderson did not present any evidence that Lukashevich previously gave alcohol to minors during his tenure as assistant coach of the junior varsity boys' basketball team. Nor did she present any evidence that Lukashevich had a history of serving alcohol to minors. Instead, Anderson argues that Soap Lake failed to adequately check into Lukashevich's background because Kemp did not recall whether he had contacted Lukashevich's references. Even assuming that no one checked Lukashevich's references, Anderson presented no evidence showing that Lukashevich's references knew that Lukashevich gave alcohol to minors or that this was a fact that Soap Lake would have reasonably discovered had it contacted Lukashevich's references. *Cf. Carlsen*, 73 Wn. App. at 256-57 (noting that a more thorough check into an employee's background would have revealed a prior juvenile and criminal record).

She also argues that Soap Lake failed to follow up with Lukashevich after he left some questions unanswered on his application. Those questions asked whether he had been found to have physically, sexually, or financially abused other individuals, including minors. However, Lukashevich answered these same questions on another application form submitted to Soap Lake.

In addition, Soap Lake ran a background check on Lukashevich with the Washington State Patrol and the Federal Bureau of Investigation, both of which cleared him. Lukashevich indicated that he had never been convicted of a crime, and his background check did not uncover anything that would indicate Lukashevich was unfit to be a basketball coach. It is not logical to infer that Soap Lake unreasonably failed to discover evidence of unfitness in these circumstances.

Even considering the facts and making all reasonable inferences in Anderson's

favor, Anderson did not present a genuine issue of material fact regarding whether Soap Lake was negligent when it hired and retained Lukashevich. Although Soap Lake knew that Lukashevich did not have a college degree or child development training, Anderson failed to present any evidence about how these gaps in Lukashevich's qualifications made him unfit to coach high school basketball. Lukashevich was qualified under the WIAA standards. Anderson also failed to present any evidence tending to show that Soap Lake knew or should have known that Lukashevich disregarded and violated the school's alcohol policies. None of the inquiries now suggested by Anderson would have revealed facts that would lead a reasonable person to conclude that Lukashevich was unfit to be a coach for a youth team.

### B. Negligent Training and Supervision

Anderson next claims that Soap Lake failed to train Lukashevich on the school's alcohol policies and about off-campus social events with the basketball team. She also claims that Soap Lake failed to adequately supervise Lukashevich. However, Anderson failed to present genuine issues of material fact on these claims. As a result, we hold that Soap Lake was entitled to summary judgment as a matter of law.

### 1. Evidence of Soap Lake's Negligence

An employer may be liable for negligently training or supervising an employee. *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 51, 929 P.2d 420 (1997). For schools, this duty requires that they "exercise ordinary care in the supervision of [their] teachers." *Scott*, 50 Wn. App. at 44. Anderson focuses on the following facts.

15

First, Kemp[14] did not remember giving a copy of the district employee handbook to Lukashevich, nor did he review the information in the handbook with him. Second, Kemp could not recall how often he made impromptu visits to practices to supervise Lukashevich. Third, Kemp failed to train Lukashevich on the school's alcohol policies. Instead, when he met with the coaches, Kemp focused on inventory, transportation, paper work, and practice schedules. Beyond the logistics of coaching, Soap Lake does not appear to have trained or supervised Lukashevich in regard to how he interacted with students. Even if it had been negligent for Soap Lake to fail to ensure that Lukashevich received a copy of the employee handbook and knew of the school's policy that student athletes may not attend events where alcohol is present, our inquiry cannot end here.

2. Lukashevich Was Not Acting within the Scope of His Employment

Even if we assume that Anderson presented sufficient evidence to create a genuine issue of material fact regarding the reasonableness of Soap Lake's training and supervision of Lukashevich, we still must determine whether Lukashevich was acting within the scope of his employment. This is because an action based on negligent training and supervision "is applicable *only* when the [employee] is acting outside the scope of his employment." RESTATEMENT (SECOND) OF TORTS § 317 cmt. a (emphasis added). If the employee is acting within the scope of his employment, then an employer is "vicariously liable under the principles of the law of Agency" instead. *Id.* Thus, to survive summary judgment on her negligent supervision claim, Anderson must present

---

[14] Kemp was the principal, athletic director, and Lukashevich's direct supervisor.

a genuine issue of material fact that when Lukashevich served alcohol to students at his house, he was acting outside the scope of his employment. *Niece*, 131 Wn.2d at 51-52.

Here, Anderson appears to confuse the standard for a negligent supervision claim with the standard for a vicarious liability claim. Thus, she argues that Lukashevich was acting within the scope of his duties. To determine whether her negligent supervision claim may proceed, we must evaluate whether Lukashevich was acting within the scope of his employment.

Whether Lukashevich was acting within the scope of employment depends on whether he was "was fulfilling his . . . job functions at the time he . . . engaged in the injurious conduct." *Robel v. Roundup Corp.*, 148 Wn.2d 35, 53, 59 P.3d 611 (2002). An employee is not fulfilling his job functions when his conduct "'is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY § 228(2) (AM. LAW INST. 1958)). Anderson makes two main arguments that Lukashevich was acting within the scope of his employment.

First, Anderson claims that Lukashevich invited Rosenberg over to his home for ice cream as a reward for her performance on the basketball team. However, beyond Anderson's assertion, there is simply no evidence in the record to support this theory. Although Lukashevich texted Rosenberg that he had bought ice cream for her and that she should come over, he did not mention the Soap Lake girls' basketball team or the reason for buying Rosenberg ice cream, or connect the invitation to his house to his role as coach in any way. In light of Turchik's message that the purpose of going to Lukashevich's home was to "get[ ] wasted," we do not find it a reasonable inference to

conclude that the ice cream was a reward for Rosenberg's basketball performance based on the other evidence present in the record.

Second, Anderson points to the fact that Kemp knew that Lukashevich previously planned to meet off campus with his basketball players and appeared to have explicitly permitted him to do so. We conclude that the mere fact that Lukashevich previously took his team out for pizza with the school's knowledge is insufficient to create a genuine issue of material fact about whether Lukashevich was acting within the scope of his employment. Anderson failed to present any evidence showing that Lukashevich's duties as coach extended to serving a student athlete ice cream and shots of vodka while entertaining her at his home with her boyfriend and two former students. The school district explicitly prohibited student athletes from consuming alcohol. No other members of the basketball team were invited or present at the party. The party was far removed from the school and traditional extracurricular activities—it occurred after midnight in a private residence. Anderson did not present any evidence tending to show that Kemp, Soap Lake, or Lukashevich believed that he was acting within the scope of his employment.

Considering the facts presented and making all reasonable inferences in favor of Anderson, there are no genuine issues of material fact that Lukashevich was acting outside the scope of his employment. Therefore, Anderson's claim is properly brought as one for negligent supervision rather than vicarious liability. RESTATEMENT (SECOND) OF TORTS § 317 cmt. a. As a result, we continue our analysis of whether Anderson presented genuine issues of material fact to survive summary judgment on her negligent supervision claim.

18

## 3. Knowledge of the Need for Supervision

A duty of supervision extends to acts beyond the scope of employment when the "employer knew, or in the exercise of reasonable care should have known that the employee presented a risk of danger to others." *Niece*, 131 Wn.2d at 48-49. This test requires the following elements:

> "'A master is under a duty to exercise reasonable care so [as] to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> "'(a) the servant
>
> "'(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>
> "'(ii) is using a chattel of the master, and
>
> "'(b) the master
>
> "'(i) knows or has reason to know that he has the ability to control his servant, and
>
> "'(ii) *knows or should know of the necessity and opportunity for exercising such control.*'"

*Id.* at 51 (quoting *Peck*, 65 Wn. App. at 294 (quoting RESTATEMENT (SECOND) OF TORTS § 317)). "Washington cases have generally interpreted th[is] knowledge element to require a showing of knowledge of the dangerous tendencies of the *particular employee.*" *Id.* at 52 (emphasis added).

Here, the record does not show that Soap Lake knew or should have known that Lukashevich would serve alcohol to student athletes. As discussed *supra*, Anderson presented insufficient evidence to create a genuine issue of material fact that Soap Lake knew or should have known that Lukashevich was a danger to students because he was

prone to serve them alcohol. Anderson also failed to present any evidence that Soap Lake knew or had reason to know that it had the ability to control Lukashevich in his home after midnight on a weekend.

The dissent wrongly focuses on the general dangers of teachers possibly giving alcohol to students. Dissent at 6-7. Yet, to meet the requirements of *Restatement (Second) of Torts* § 317(b), Washington courts have "require[d] a showing of knowledge of the dangerous tendencies of the *particular employee.*" *Niece*, 131 Wn.2d at 52 (emphasis added). We discussed this rule in *Niece*, where the record failed to show that the employer knew or should have known that an employee would sexually assault residents. *Id.* Instead, the plaintiff "base[d] her negligent supervision claim on more general factors." *Id.* We noted that the plaintiff's argument based on these general factors "appear[ed] to be an expansion of the existing cause of action for negligent supervision." *Id.* We declined to address the merits of the plaintiff's negligent supervision claim because her broad theory of negligent supervision "also establish[ed] . . . negligence in failing to protect [the plaintiff] from all foreseeable harms." *Id.* Thus, because we had already concluded that the plaintiff could proceed with her negligent protection claim, her broad negligent supervision claim "collapse[d]" into her negligent protection claim. *Id.*

We agree with the majority's reasoning in *Niece*.[15] When based on general dangers, like those the dissent advances here, a claim that an employer should have supervised its employee when he or she was acting outside the scope of employment collapses into a negligent protection claim. *Id.* Thus, to meaningfully distinguish a negligent supervision claim from a negligent protection claim, we require a plaintiff alleging negligent supervision of an employee to show that the employer knew or should have known of the dangerous tendencies of a particular employee. *See, e.g., Thompson v. Everett Clinic*, 71 Wn. App. 548, 860 P.2d 1054 (1993), *review denied* 123 Wn.2d 1027, 877 P.2d 694 (1994); *Peck*, 65 Wn. App. 285.

This rule does not give "a free pass" to school districts when different employees cause harm to students. *Cf.* Dissent at 13. Instead, in instances where there is no evidence that the school district knew or should have known about the dangerous tendencies of a *particular* employee, plaintiffs are free to rely on general factors of foreseeable harm to establish a negligent protection claim. *See Niece*, 131 Wn.2d at 52.

For example, in *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 425-27, 378 P.3d 162 (2016), the school principal knew of the particular dangers of the student who caused another student harm. She knew that the perpetrator was "a registered sex offender who

---

[15] To craft its proposed new rule regarding negligent supervision of employee claims, the dissent relies on cases discussing *negligent protection claims*, sometimes referred to as negligent supervision of a student, not negligent supervision of employee claims. *See, e.g.*, dissent at 12 (citing *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 321, 255 P.2d 360 (1953)). Thus, this proposed new rule is unsupported by our case law that actually addresses the relevant claim here. The dissent also offers no supporting citation for its contention that the questions presented by a negligent supervision of an employee claim are "therefore similar to the reasonable foreseeability question" in negligent protection claims. *Id.* at 11. Such a rule would "be an expansion of the existing cause of action for negligent supervision." *Niece*, 131 Wn.2d at 52. As a result, we decline to adopt the dissent's proposed rule regarding negligent supervision of employee claims.

had previously sexually assaulted a younger girl who had been about [the victim's] age at the time." *Id.* at 425-26. Despite this knowledge, the principal failed to comply with a district policy that required principals to inform the teachers of a student's sex offender status. *Id.* at 427. She also failed to take measures that would have helped the student avoid students "two or more years younger than him[self]." *Id.* In contrast, here, Anderson presented no facts that the school district knew or should have known that Lukashevich would give alcohol to students and allow them to drive intoxicated. Without any facts to support that the school district knew or should have known of the particular dangerous tendencies of Lukashevich, Anderson cannot survive summary judgment on this claim.

The dissent also claims that "the school was aware of the risk that its underage students were drinking," creating genuine disputes of material fact about Soap Lake's duty to supervise Lukashevich. Dissent at 7. Even if this were indeed the case, we fail to see how or why this "support[s] the allegation that the school district knew or should have known of the necessity and opportunity for exercising control over [Lukashevich]" while he acted outside the scope of his employment. *Id.* As discussed above, to establish a negligent supervision claim, a plaintiff must demonstrate that an employer knew or should have known of the dangerous tendencies of a particular employee. The general danger of underage drinking does not establish this knowledge on behalf of the school district.[16] Rather, the risk of underage student drinking would be relevant to Anderson's

---

[16] The dissent mistakenly relies on ER 407 to support its claim that the Activities Code showed that Soap Lake knew that its students were drinking alcohol. Dissent at 7 n.3. But ER 407 concerns subsequent remedial measures. Here, the Activities Code was in place before Rosenberg was injured. Thus, the rationale underlying ER 407 is inapplicable here.

negligent protection claim, not her negligent supervision claim. The dissent collapses the elements required for a negligent supervision claim and a negligent protection claim— the very danger that we recognized in *Niece*. 131 Wn.2d at 52 ("The same evidence that would establish [the employer's] negligence under a broad theory of negligent supervision will also establish its negligence in failing to protect [a victim] from all foreseeable harms. [The] cause of action for negligent supervision thus collapses into [the] negligence claim based on [the employer's] breach of its special relationship duty of care."). Thus, the risk of underage drinking is not a material fact defeating summary judgment. To hold otherwise, as the dissent would have us do, would expand the duty of supervision into the home of each teacher or school employee. There is no support for such an approach.

Consequently, Anderson fails to present a genuine issue of fact that Soap Lake knew or should have known that it needed to exercise control over Lukashevich while he was acting outside the scope of his employment. We affirm the grant of summary judgment on Anderson's negligent training and supervision claims.

C. *Negligent Protection*[17]

Anderson next claims that Soap Lake was negligent in its duty to protect Rosenberg. To prevail on her claim that Soap Lake negligently failed to protect Rosenberg from harm, Anderson must meet one of two standards. Because Anderson

---

[17] Courts have also referred to this claim as "negligent supervision of [a] student." *See, e.g., Scott*, 50 Wn. App. at 44 (formatting omitted).

fails to present a genuine issue of material fact regarding either option, we affirm the grant of summary judgment to Soap Lake on this issue.

"[S]chool districts have 'an enhanced and solemn duty' of reasonable care to protect their students."[18] *N.L.*, 186 Wn.2d at 430 (quoting *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 67, 124 P.3d 283 (2005)). They must "protect the students in their custody from foreseeable dangers." *Id.* at 431. An injury may be foreseeable even if it occurred off school grounds or involved an intentional tort. *Id.* at 434-35 ("'[A] school district may owe a duty to its students, despite the fact that injury occurred off of school grounds and outside of school hours.'" (alteration in original) (quoting *Stoddart v. Pocatello Sch. Dist. # 25*, 149 Idaho 679, 684, 239 P.3d 784 (2010))); *see also Niece*, 131 Wn.2d at 50 ("Intentional or criminal conduct may be foreseeable unless it is 'so highly extraordinary or improbable as to be wholly beyond the range of expectability.'" (quoting *Johnson v. State*, 77 Wn. App. 934, 942, 894 P.2d 1366 (1995))). As long as the harm was "within the general field of danger which should have been anticipated," it is foreseeable. *Niece*, 131 Wn.2d at 50.

While "'the essential rationale for imposing a duty [on school districts] is that the victim is placed under the control and protection of . . . the school, with resulting loss of control to protect himself or herself' . . . it does not follow that the victim must be in the school's custody at the time of the *injury* for the duty to have existed." *N.L.*, 186 Wn.2d

---

[18] The duty of Soap Lake to protect Rosenberg from foreseeable harms "is much broader than its duty as an employer to control its employees." *Niece*, 131 Wn.2d at 52. We have previously held that "[t]he same evidence that would establish . . . negligence under a broad theory of negligent supervision will also establish . . . negligence in failing to protect [an individual] from all foreseeable harms." *Id.*

at 433-34 (internal quotation marks omitted) (quoting *N.K. v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 175 Wn. App. 517, 532, 307 P.3d 730 (2013)). "'[T]he relevant inquiry is to the location of the negligence rather than the location of the injury.'" *Id.* at 435 (quoting *Stoddart*, 149 Idaho at 685). Thus, "where a duty arises and a breach of that duty occurs while a student *is in a school district's custody*, then whether the *scope of that duty extends* to incidents off campus will depend on whether such incidents were foreseeable to the school district." *Bell v. Nw. Sch. of Innovative Learning*, 198 Wn. App. 117, 124, 391 P.3d 600 (2017). As a result, "'[f]oreseeability is the most important variable in the duty calculus.'"[19] *N.L.*, 186 Wn.2d at 434 (quoting *Eisel v. Bd. of Educ.*, 324 Md. 376, 386, 597 A.2d 447 (1991)).

Based on these principles, we have held that a school district may be liable for students' injuries that occur off campus in two circumstances: (1) when the student's injury occurs at an off-campus event that was planned or supervised by a district employee and that event is sufficiently connected to an official extracurricular activity such that the school district has custody of the student or (2) when the school district was negligent while the student was in its custody and the student's off-campus injury was a foreseeable result of that negligence. We conclude that Anderson fails to present genuine issues of material fact under either option.

---

[19] "'[F]oreseeability is normally an issue for the jury.'" *N.L.*, 186 Wn.2d at 436 (alteration in original) (internal quotation marks omitted) (quoting *Taggart v. State*, 118 Wn.2d 195, 224, 822 P.2d 243 (1992)).

1. School Event and Custody

First, a school district may be liable when the student's injury occurs at an off-campus event that was planned or supervised by a district employee and that event is sufficiently connected to an official extracurricular activity such that the school district has custody of the student. For example, in *Chappel v. Franklin Pierce School District, No. 402*, 71 Wn.2d 17, 17-18, 426 P.2d 471 (1967), a student was injured during an off-campus initiation ceremony for the Franklin Pierce High School Key Club. The initiation ceremony had been planned and scheduled by the faculty advisor and Key Club members. *Id.* at 19. In addition, the Key Club was "authorized, approved, accepted, and faculty supervised by the high-school authorities as an extracurricular student organization for several years." *Id.* at 18. The initiation ceremony "had become somewhat traditional with the chapter," had long been conducted off campus with physical activity, and "had been so carried on with the knowledge, approval, and supervision of the faculty advisor, and without objection by the school administration or school district authorities." *Id.* at 18-19. Thus, because "the school administration ha[d] assumed supervisory responsibility over the organization which, in turn, extends to tacit approval of and faculty participation in planning and supervising off-campus initiation ceremonies," we remanded the case for further proceedings. *Id.* at 24.

In contrast, in *Coates v. Tacoma School District No. 10*, 55 Wn.2d 392, 399, 347 P.2d 1093 (1960), we affirmed the dismissal of a complaint seeking damages against a school district. The plaintiff, a student, was injured in a car accident after he left an initiation ceremony for a club that "had no curricular or no representative extra-curricular connection with the school." *Id.* at 396-97. There was "no allegation that the school

district appointed a teacher or an employee to supervise the members of the organization." *Id.* at 394-95. Instead, the ceremony was not authorized, supervised, or attended by school authorities. *Id.* at 395. As a result, "the event causing the injuries [was] so distant in time and place from any normal school activity" that the school district could not be held liable. *Id.* at 399.

Here, there is no question that Lukashevich planned and supervised the event at his home. However, Anderson did not present a genuine issue of material fact that the event was a school activity such that Soap Lake exercised custody over Rosenberg. No other member of the high school girls' basketball team was present at Lukashevich's house with Rosenberg. Neither was there any evidence that Rosenberg's presence at the home was somehow related to Rosenberg's role on the team. Anderson presented no evidence that the district knew of the activity or that Lukashevich held the activity as part of his duties as basketball coach. Thus, we conclude that the "gathering at Lukashevich's home was [too] distant in time and place from any normal school activity" to impose liability on Soap Lake. *Anderson*, slip op. at 4.

### 2. Foreseeable Off-Campus Injury

Second, a school district may be liable for a student's injury off campus when the school district was negligent while the student was in its custody and the student's off-campus injury was a foreseeable result of that negligence. For example, in *N.L.*, we held that a school district had potential liability for a student's off-campus rape. 186 Wn.2d at 426. The school district knew that the perpetrator was "a registered sex offender who had previously sexually assaulted a younger girl who had been about [the victim's] age at the time." *Id.* at 425-26. Despite this knowledge, "the principal did not inform . . . teachers,

coaches, or relevant staff" of the student's sex offender status. *Id.* at 427. The school district had a policy that required the principal to inform the student's teachers of his sex offender status. *Id.* The principal also did not develop a safety plan or take other measures that would have helped the student avoid students "two or more years younger than him." *Id.* Thus, although the victim left campus with the student before she was raped, the fact that students have been skipping class "'[s]ince at least the days of Huck Finn and Tom Sawyer,'" made her injury potentially foreseeable. *Id.* at 436 (alteration in original) (quoting *Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal. 3d 508, 520, 585 P.2d 851, 150 Cal. Rptr. 1 (1978)). As a result, we remanded the case for the jury to consider the issue of whether the rape fell within the scope of the school district's duty. *Id.*[20]

Here, Anderson did not present a genuine issue of material fact that Soap Lake was negligent while Rosenberg was in its custody or that her injury was foreseeable. Unlike the plaintiff in *N.L.*, Anderson failed to present sufficient evidence of *on-campus* negligence. As discussed *supra*, she presented insufficient evidence to support her claims that Soap Lake negligently hired, retained, trained, or supervised Lukashevich.

Anderson also failed to present any evidence that Rosenberg's injuries were foreseeable. She lacks evidence to support her allegation that it was foreseeable that

---

[20] *See also Bell*, 198 Wn. App. 117. In *Bell*, the Court of Appeals noted that a school district was potentially liable for the sexual assault of a student which occurred off campus. *Id.* at 127. A special education student left a school district bus while it was parked in front of her school. *Id.* at 119. She went to the library, met a stranger, and agreed to go to the stranger's apartment. *Id.* at 120. The stranger sexually assaulted her at his apartment. *Id.* The Court of Appeals held that as a matter of law, the school district had custody of the student because the school made a "'positive handoff'" of custody to the school district bus driver. *Id.* at 127. Thus, the district owed a duty of care to the student and was potentially liable for the off-campus harm that occurred after the district employee let the student leave the bus. *Id.*

28

Lukashevich would invite Rosenberg over to his house and serve her alcohol after midnight on a Friday. Nor was it foreseeable that Lukashevich would then allow Rosenberg to leave his home in a vehicle with an intoxicated driver. Contrary to the dissent's contention, the district's notice that Lukashevich held one off-campus pizza party does not make Rosenberg's injuries foreseeable. Dissent at 17. The directive for coaches to create a "positive" and "supportive" culture with student athletes also does not lead to a reasonable inference that the "school district authorized the social event at the coach's home." Dissent at 17-18. Neither does the principal's contention that Lukashevich could take his team out for pizza lead to a reasonable inference that "the coach . . . was allowed to give them individual and team treats whenever he wanted." Dissent at 16. Anderson's allegations are simply insufficient to create a genuine factual dispute about whether Rosenberg's injuries were foreseeable. As a result, the trial court properly granted summary judgment.

In sum, Anderson failed to present sufficient evidence to create issues of fact that Soap Lake acted negligently when it hired and supervised Lukashevich or that the harm to Rosenberg was reasonably foreseeable. Even considering all the facts and making all reasonable inferences in Anderson's favor, we conclude that Soap Lake "had no way to anticipate the danger or exercise its supervision over . . . Rosenberg at midnight on a Friday." *Anderson*, slip op. at 4. Soap Lake hired Lukashevich to coach the girls' basketball team. He was qualified to coach according to WIAA standards. In accordance with those standards, Soap Lake also required its student athletes to agree not to consume alcohol. Anderson presented no evidence that Soap Lake knew or should have known that Lukashevich would serve alcohol to Rosenberg or Turchik or let them drive

away from his home intoxicated. Instead, it explicitly forbade teachers from consuming alcohol on campus around students. While Soap Lake knew that Lukashevich previously took the basketball team out for pizza at least one time, there is no evidence that it otherwise endorsed or tacitly approved of Lukashevich inviting student athletes over to his home for alcohol after midnight on a weekend. It is not reasonable to infer that the team pizza party made the injuries Rosenberg suffered foreseeable. Consequently, we affirm the grant of summary judgment on Anderson's negligent protection claim.

## III.  Vicarious Liability

Anderson alternatively argues that Soap Lake is vicariously liable for the harm caused by Lukashevich's serving alcohol to Rosenberg. Because there is no genuine issue of material fact whether Lukashevich was acting within the scope of his employment, we conclude that summary judgment was appropriate.

Vicarious liability "imposes liability on an employer for the torts of an employee who is acting on the employer's behalf."[21] *Niece*, 131 Wn.2d at 48. The scope of employment limits the vicarious liability of an employer. *Id.* When an employee pursues a personal objective, rather than the employer's purpose, the employer cannot be held vicariously liable. *Id.* However, an employee's "intentional or criminal conduct is [not] per se outside the scope of employment."[22] *Robel*, 148 Wn.2d at 53. Rather, "[a]n employee's conduct will be outside the scope of employment if it 'is different in kind from

---

[21] "The causes of action for negligent hiring, retention, supervision and training are analytically different from vicarious liability." *Evans v. Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 47, 380 P.3d 553, *review denied*, 186 Wn.2d 1028 (2016). "They are based on the concept that the employer's *own* negligence is a wrong to the injured party, independent from the employer's liability for its employee's negligence imputed by the doctrine of respondeat superior." *Id.*

[22] *Cf. Evans*, 195 Wn. App. at 38 ("Washington courts uniformly have held as a matter of law that an employee's intentional sexual misconduct is not within the scope of employment.").

that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY § 228(2)). Thus, "[t]he proper inquiry is whether the employee was fulfilling his or her job functions at the time he or she engaged in the injurious conduct." *Id.*

As discussed *supra*, Anderson presented no genuine issues of material fact that Lukashevich was acting within the scope of his employment. The school district clearly did not authorize its employees to serve students alcohol. Instead, it had policies in place prohibiting student athlete consumption of alcohol. It is unreasonable to infer that Soap Lake viewed furnishing alcohol to a member of the team at Lukashevich's home as within the scope of his employment. Even if we consider all the facts and reasonable inferences in Anderson's favor, Anderson fails to present a genuine issue of material fact that Lukashevich was acting within the scope of his employment. Consequently, we affirm the grant of summary judgment on Anderson's vicarious liability claim.

IV.     Breach of Contract

Finally, Anderson argues that the Activities Code, under which student athletes agree to not consume alcohol or visit places where alcohol is present, was a contract of adhesion. Specifically, she argues that because Soap Lake required Rosenberg to agree not to consume alcohol or attend events where alcohol was present, it breached its duty to protect Rosenberg from harm when Lukashevich provided alcohol to her. We conclude that the Activities Code is not a contract on which Anderson can bring a claim.

"A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 531, 424 P.2d 290 (1967) (quoting RESTATEMENT OF

31

CONTRACTS § 1 (1932)). When a contract is unconscionable, the court may exempt a party from the terms of a contract. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 303-04, 103 P.3d 753 (2004). A contract may be procedurally unconscionable if it is adhesive. *Id.* at 304. A contract is adhesive when it meets the following three factors: "'(1) whether the contract is a standard form printed contract, (2) whether it was "prepared by one party and submitted to the other on a 'take it or leave it' basis," and (3) whether there was "no true equality of bargaining power" between the parties.'" *Id.* (quoting *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 393, 858 P.2d 245 (1993) (quoting *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 383 n.5 (9th Cir. 1965)).

While Anderson is right that the Activities Code technically meets the factors of adhesion,[23] this fact does not support her breach of contract claim. The factors of adhesion merely help the court determine whether a contract is procedurally unconscionable. *See id.* Procedural unconscionability permits a court to exempt a party from the terms of a contract. *Id.* at 303-04. Here, Anderson does not seek to be exempted from the terms of the Activities Code. Instead, she seeks to sue Soap Lake for breaching the Activities Code. Thus, whether the Activities Code is adhesive does not answer the question of whether Anderson may sue Soap Lake for breaching the Activities Code.

---

[23] The Activities Code meets all three factors of adhesion listed in *Zuver*. The Activities Code was a standard printed form, it was prepared on a take it or leave it basis, and the school district and student athletes and their parents or guardians have unequal bargaining power. *Zuver*, 153 Wn.2d at 304 (quoting *Yakima Fire Prot. Dist. No. 12*, 122 Wn.2d at 393); *see also Wagenblast v. Odessa Sch. Dist. No. 105-157-166J*, 110 Wn.2d 845, 855, 758 P.2d 968 (1988) (concluding that a contract was adhesive because "[s]tudent athletes and their parents or guardians have no alternative but to sign the standard release forms provided to them or have the student barred from the program").

32

Rather than deciding if the Activities Code was an adhesive document, we must instead decide if it was a valid contract.

To bring a claim for breach of contract, a party must point to a separate duty contained in the contract that is different from the duties already imposed by law on the parties. *Bank of Am. NT & SA v. David W. Hubert, PC*, 153 Wn.2d 102, 124, 101 P.3d 409 (2004) ("An action sounds in contract when the act complained of is a breach of a specific term of the contract, without reference to the legal duties imposed by law on that relationship."). Thus, "[w]here an offeree is under a preexisting duty created or imposed by law to do what he does, the offeree's performance will not suffice as consideration for a unilateral contract." *Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 114 Wn.2d 572, 584-85, 790 P.2d 124 (1990).

Here, the Activities Code did not create any duties relevant to Anderson's claims different from those already imposed by law on Soap Lake and Rosenberg. In the Activities Code, a student athlete agrees to abide by certain policies, including abstention from alcohol. If a student fails to comply with the Activities Code, he or she may be suspended from play. In turn, Soap Lake implicitly agrees to provide the athlete an opportunity to play a team sport.[24] Anderson claims that the Activities Code goes beyond the opportunity to play, imposing a heightened duty of care on Soap Lake to protect Rosenberg from harm caused by alcohol. However, Soap Lake already has a duty to protect its students from harm—whether from alcohol or other sources. *See N.L.*, 186 Wn.2d at 430. It is also already illegal to provide alcohol to minors. *See* RCW

---

[24] We have previously held that "public school students have no fundamental right to participate in interscholastic athletics." *Wagenblast*, 110 Wn.2d at 853.

66.44.270(1) ("It is unlawful for any person to sell, give, or otherwise supply liquor to any person under the age of twenty-one years or permit any person under that age to consume liquor on his or her premises or on any premises under his or her control."). As a result, the Activities Code does not create a duty of protection beyond that which the law already imposes on Soap Lake. Consequently, because Anderson does not have a valid claim for breach of contract, we affirm the grant of summary judgment to Soap Lake on this claim.

## CONCLUSION

In conclusion, while the alleged actions of Lukashevich are inexcusable, we affirm the dismissal of Anderson's claims against the district. Anderson did not present genuine issues of material fact about whether Soap Lake acted negligently by hiring, retaining, training, or supervising Lukashevich or by failing to protect Rosenberg from the harm she suffered. We affirm summary judgment on Anderson's vicarious liability claim because Anderson did not present a genuine issue of material fact about whether Lukashevich was acting within the scope of his employment. Finally, we affirm summary judgment on Anderson's breach of contract claim. Anderson cannot bring a breach of contract claim because the Activities Code did not create any new duties on behalf of Soap Lake to protect Rosenberg. The Court of Appeals is affirmed.

_____
Wiggins, J.

WE CONCUR.

Fairhurst, C.J.
_____          _____

_____          _____

Madsen, J.
_____          _____

Owens, J.
_____          _____

No. 93977-2

GORDON McCLOUD, J. (dissenting in part)—The head coach of the girls'

varsity basketball team at Soap Lake High School invited one of his players to his

home at midnight on a Friday night. She accepted. He served alcohol to her and her

high-school-student boyfriend. They drank. Both students then died in a drunk-

driving crash after leaving the coach's home. The young man was driving; the young

woman was the passenger. The young woman's mother filed this lawsuit alleging

five claims against the school district: (1) breach of contract, (2) negligent hiring and

retention of the coach, (3) vicarious liability for the coach's actions, (4) negligent

supervision of the coach, and (5) negligent protection of the students. The trial court

dismissed all five claims on summary judgment, CR 56.

I agree with the majority that the trial court properly dismissed the plaintiff's

breach of contract, negligent hiring and retention, and vicarious liability claims.

Despite having over a year and a half to conduct discovery, the plaintiff failed to

present any evidence that the coach was unqualified to coach or that the school

1

district knew or had reason to know that the coach posed an undue risk of harm to its students. Thus, there were no facts to support the plaintiff's negligent hiring or retention claims. I further agree with the majority's conclusion that the school district's athletic code did not place a contractual duty on the district to monitor student consumption of alcohol at all times, day and night. The athletic code required student athletes to maintain good grades, attend class, refrain from committing crimes, and abstain from alcohol, tobacco, and illegal drugs as conditions of participating in school athletics; but it did not place an affirmative contractual duty on the district to ensure that the student athletes complied with those conditions. Finally, I agree with the majority that the act of furnishing alcohol to underage students fell outside the coach's scope of employment, so the district is not vicariously liable for that act.

I disagree, however, with the majority's decision to affirm dismissal of the plaintiff's negligent supervision and negligent protection claims. Although the evidence was certainly thin,[1] when viewed in the light most favorable to the

---

[1] I agree with the majority that the reviewable evidence includes the unauthenticated text messages between the student athletes and the coach discussing their activities that night, but not the police report. The trial court's summary judgment order states that the court "review[ed] the case record to date" and "reviewed and considered the entire court file in reaching [its] decision," which includes the text messages that the plaintiff attached to an affidavit that she filed in response to an earlier motion. Clerk's Papers (CP) at 498. The school district failed to object to the trial court's consideration of those text messages.

2

plaintiff,[2] it presents material questions of fact on the following issues: whether the school district knew there was a problem with underage drinking among high school students and student athletes; whether the district authorized the coach to meet with individual students off campus when it tasked the 22-year-old head basketball coach with fostering a "positive" and "supportive" culture with his student athletes and gave the coach blanket authorization to treat those student athletes to meals and socials off campus and after hours; and whether the district failed to instruct the coach that he could not furnish or have alcohol around the student athletes at such off-campus events. Those questions are sufficient to survive summary dismissal of the negligent supervision and negligent protection claims. I therefore dissent in part.

---

"Failure to make such a motion [to strike evidence contained within an affidavit] waives deficiency in the affidavit if any exists." *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346 (1979) (citing *Meadows v. Grant's Auto Brokers, Inc.*, 71 Wn.2d 874, 431 P.2d 216 (1967); 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2738 (1973)). In contrast, the school district did raise a hearsay objection to the superior court's consideration of the police report. Verbatim Report of Proceedings (Oct. 9, 2015) at 54. I agree with the majority that the police report constitutes inadmissible hearsay. Majority at 9 n.11 (citing *In re Det. of Coe*, 175 Wn.2d 482, 505, 286 P.3d 29 (2012)).

[2] On summary judgment, the court considers all facts and reasonable inferences in the light most favorable to the nonmoving party. *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 526, 404 P.3d 464 (2017) (citing *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989)).

3

ANALYSIS

*Negligence*

The majority is certainly correct that the coach was acting outside the scope of his employment when he furnished alcohol to the student athletes so the plaintiff cannot hold the school district vicariously liable for the coach's acts. But that does not immunize the school district from all tort liability. Instead, the school district remains liable for harm caused by direct breaches of its own duties. Reviewing the evidence in the light most favorable to the plaintiff, the plaintiff has presented enough evidence to survive a motion for summary judgment on whether the school district breached its own duties to supervise and train its employees and protect its students.

A. The Plaintiff Showed That the School District Encouraged the 22-Year-Old Coach To Foster Supportive Relationships with Student Athletes off Campus but Failed To Instruct Him That He Could Not Have Alcohol around Them; This Creates a Material Question of Fact about Whether the School District Breached a Duty To Supervise and Train

The plaintiff contends that the school district was negligent in failing to instruct the 22-year-old basketball coach that he could not provide alcohol to or have alcohol around underage student athletes at any time. This negligent supervision and training claim is based on the school district's duty to control its employees so

4

as to prevent them from harming others with whom they come into contact in the workplace.

It is undisputed that the coach was an employee of the school district. An employer-employee relationship, of course, is not enough to trigger the duty to supervise and control. In addition, the plaintiff must show that the employer's need to supervise arose while the employee was on the employer's premises and that the employer knew or should have known certain things:

> "'[An employer] is under a duty to exercise reasonable care so [as] to control his servant . . . to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if
> "'(a) the servant . . .
> "'(i) is upon the premises in possession of the [employer]
> "' . . .
> "'(b) the [employer]
> "'(i) knows or has reason to know that he has the ability to control his servant, and
> "'(ii) knows or should know of the necessity and opportunity for exercising such control.'"

*Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 51, 929 P.2d 420 (1997) (emphasis omitted) (second alteration in original) (quoting *Peck v. Siau*, 65 Wn. App. 285, 294, 827 P.2d 1108 (1992) (quoting RESTATEMENT (SECOND) OF TORTS § 317 (AM. LAW INST. 1965))).

All three prerequisites to the employer's duty to act were arguably present here.

First, the teacher-student relationship between the coach and the female student arose while the coach was on school grounds. Thus, the first element that "the servant [be] upon the premises in possession of the [employer]" is supported by evidence.

Second, a workplace policy barred teachers from having alcohol around students. That workplace policy instructed teachers to behave as "exemplary adult role models for all students" and prohibited them from possessing, using, or distributing alcohol on school premises or off campus as part of any school activity. Clerk's Papers (CP) at 465. This evidence could support a finding that the school district knew or had reason to know that it had the ability to control the coach and prohibit him from supplying alcohol to students. Thus, the second element—that the employer "knows or has reason to know that he has the ability to control his servant"—is supported by evidence.

The third element is whether the employer "knows or should know of the necessity and opportunity for exercising such control." Based on the workplace policy barring teachers from having alcohol around students, a jury could conclude that the school was aware of the risk that teachers might give alcohol to students.

CP at 465. And based on the school's student athletics policy—instructing athletes that they "may not possess, imbibe, or ingest, alcohol in the form of beer, wine, liquors, or distilled spirits" during their tenure on the high school team, "in or out of season," as a condition of playing school sports, CP at 199-200—a jury could conclude that the school was aware of the risk that its underage students might drink.[3] Viewed in the light most favorable to the plaintiff, these two policies support the allegation that the school district knew or should have known of the necessity and opportunity for exercising control over the coach and instructing him that he could not have alcohol around his students.

A reasonable juror could therefore find that the school district had a duty to supervise and train the coach about keeping alcohol away from students.

The plaintiff has also presented evidence from which a jury could conclude that the school district breached that duty to train and supervise. The plaintiff presented evidence that the school district hired a 22-year-old former student to coach the girls' varsity basketball team and foster a "positive" and "supporting"

---

[3] The majority claims it is illogical to rely on such documents, which the school district required its students to sign, for the conclusion that the school district was aware of the risk of underage drinking. Majority at 22. The majority errs. Taking remedial steps to prevent harm actually shows awareness of a potential harm to be avoided. That's the whole reason that we need a rule to exclude subsequent remedial measures from evidence (ER 407): without the rule, they would be relevant and admissible to show awareness of the danger.

relationship with the student athletes, CP at 387-88. She presented evidence that the district authorized him to meet with those student athletes after hours and off school grounds. CP at 405-07. Finally, the plaintiff showed that the school district may have failed to instruct the young coach that he could not furnish alcohol to students while they were off campus. The principal in charge of supervising the coach could not recall ever giving the coach a copy of the workplace policy barring teachers from drinking around students. CP at 378. Nor could the principal remember discussing that policy with the coach. CP at 388. Indeed, the school district failed to produce any record documenting that the coach received that workplace policy, even though the school district required teachers to sign a form acknowledging its receipt. CP at 465, 475. This all supports the inference that the coach was not given or instructed on that policy.

There is also evidence to support the plaintiff's assertion that the school district failed to instruct the coach about the ban on alcohol for student athletes. As described above, the school district developed a student activities code specific to student athletes that prohibited them from using drugs or alcohol on and off campus. If they used drugs or alcohol, they were barred from participating in school athletics. It was the coach's job to enforce the code. But there is evidence that the school district may have failed to inform the coach about that code: the school principal

who was tasked with supervising and training the coach said that although it was routine for him to discuss the student activities code with his coaches, he could not recall discussing the code with this coach. CP at 390-92.

Whether the school district knew it had the ability to control the coach, whether it knew of the need and opportunity to exercise that control, whether the principal ever discussed the student activities code with the coach, whether the coach was given a copy of the workplace policy or the student activities code, and whether any of those possibilities suffice to discharge the school district's duty to supervise and train the coach are all questions of fact. They preclude summary judgment dismissal on the issues of negligent supervision and breach.

The school district argues that it had no duty to supervise the coach because the coach was acting outside the scope of his employment. I agree with the school district that the act of furnishing alcohol to underage students was too far removed from the coach's duties as a basketball coach to fall within the coach's scope of employment. But as the majority correctly observes, the fact that the coach was not acting within the scope of employment is precisely the fact that triggers a possible negligent supervision claim: "an action based on negligent training and supervision 'is applicable *only* when the [employee] is acting outside the scope of his

employment.'" Majority at 16 (alteration in original) (quoting RESTATEMENT (SECOND) OF TORTS § 317 cmt. a).

I also agree with the majority that the school district could still be liable for negligent supervision even though the coach furnished alcohol to the students at an off-campus location—his home. The school district's focus on the location where the alcohol was furnished is misplaced. Our cases have held that "the focus is not on where or when the harm occurred, but on where the [employer or its agents] negligently caused the harm by placing its agent into association with the plaintiffs when the risk was, or should have been, known." *E.g.*, *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 724, 985 P.2d 262 (1999). We reaffirmed that approach just two years ago in *N.L. v. Bethel School District*, 186 Wn.2d 422, 430, 378 P.3d 162 (2016). To hold otherwise would absolve the school district of liability for its negligent acts on campus simply because the ultimate harm occurred off campus—even where, as here, there is evidence that the school district breached a duty to train and supervise the coach while he was *on* campus about how he should behave around students.

The majority, however, concludes that the school district cannot be held liable in this case, even if the district failed to instruct the coach on its alcohol-free workplace policy and alcohol-free student activities code. Majority at 16. The

10

majority says these failures would not matter because "the record does not show that Soap Lake knew or should have known that [this coach] would serve alcohol to student athletes." *Id.* at 19. But the *Restatement* test (recited above) does not require the employer to know that a particular employee will engage in a particular act for the duty to supervise and train to attach. Instead, the *Restatement* asks more generally whether the employer "knows or should know of the necessity and opportunity for exercising . . . control" over the employee. RESTATEMENT (SECOND) OF TORTS § 317.

The "knows or should know" element is phrased in these more general terms because the duty to supervise stems from several sources. It is certainly based in part on the employer's relationship with and control over the employee. But it is also based on the employer's ownership of and control over its premises and the employer's relationship with those whom the employer places in contact with the employee. *See id.* cmt. b. The "knows or should know" question is therefore similar to the reasonable foreseeability question in that it takes more general circumstances into consideration; it asks whether the employer knew or should have known that it needed to exercise control over, supervise, and/or train the employee with regard to student drinking. "[T]he pertinent inquiry is not whether the actual harm was of a particular kind which was expectable"; "[r]ather, the question is whether the actual

harm fell within a general field of danger which should have been anticipated."
*McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 321, 255 P.2d 355
(1953) (citing *Berglund v. Spokane County*, 4 Wn.2d 309, 103 P.2d 361 (1940);
FOWLER V. HARPER & FRANCIS H. BOHLEN, CASES ON THE LAW OF TORTS § 7, at 14
(5th ed. 1953); 2 RESTATEMENT OF TORTS § 435, at 1173 (AM. LAW INST. 1934));
*Niece*, 131 Wn.2d at 42, 50 (holding it was foreseeable that a nursing home caretaker
might sexually abuse a resident even though the defendant caretaker had a clean
criminal record and a clean employment history). Thus, even if the specific manner
in which the risk culminated in harm in this case was not absolutely predictable, "'if
the harm suffered falls within the general danger area, there may be liability.'"
*McLeod*, 42 Wn.2d at 321 (quoting HARPER & BOHLEN, *supra*, § 7, at 14).

Here, the general danger area was underage student drinking and driving,
particularly in a social context. No one seriously argues that it was unforeseeable
that a 22-year-old high school varsity basketball coach who regularly met with his
players after school at team practices, games, and other team social events might
give alcohol to his players. This is sufficient to satisfy the third element that the
school district "knows or should know of the necessity and opportunity for
exercising . . . control" over the employee.

The majority contends that "'Washington cases have generally interpreted th[e] knowledge element to require a showing of knowledge of the dangerous tendencies of the *particular employee*.'" Majority at 19 (quoting *Niece*, 131 Wn.2d at 52). But *Niece* does not adopt this rule. *Niece* noted only that this narrow interpretation was offered by the Court of Appeals in two cases, *Thompson*[4] and *Peck*, and concluded that that interpretation was not binding on this court. *Niece*, 131 Wn.2d at 52. We resolved *Niece* on different grounds. *Id.* We should not adopt that employee-specific rule now. If we did, the school district would get a free pass every time a different coach furnished alcohol to a student at that school. This is not the rule in Washington.

In sum, the evidence that the school district knew of the risk that its student athletes might be drinking off campus, hired a very young coach, placed him in close contact with student athletes who were about his age, and encouraged the coach to meet with those student athletes off campus and after hours, but never cautioned him against having alcohol around those students supports the plaintiff's negligent

---

[4] *Thompson v. Everett Clinic*, 71 Wn. App. 548, 860 P.2d 1054 (1993).

training and supervision claim. Together, that evidence suffices to defeat summary judgment on the issues of duty and breach. CP at 404-07.[5]

B. The Plaintiff Argues That the School District Gave the Coach Blanket Authorization To Treat His Players to Evening Socials off Campus; This Creates a Material Question of Fact about Whether the School District Had a Duty To Protect the Student Athletes While They Were at the Coach's Home

School districts have a duty of reasonable care to protect their students. *N.L.*, 186 Wn.2d at 430 (quoting *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 67, 124 P.3d 283 (2005)). This duty requires school districts "to anticipate dangers which may reasonably be anticipated, and to then take precautions to protect the pupils in its custody from such dangers." *McLeod*, 42 Wn.2d at 320.[6]

---

[5] The issues of causation and damages are not before us. The school district sought summary judgment dismissal of the plaintiff's claims based solely on the absence of duty. CP at 168-78, 295-305. This analysis is consequently restricted to the issue of duty and the related issue of breach.

[6] Dangers that school districts must anticipate and take precautions against include the danger that young students will injure themselves while climbing on gymnasium fitness equipment, *Tardiff v. Shoreline Sch. Dist.*, 68 Wn.2d 164, 411 P.2d 889 (1966), the danger that students will play too aggressively with each other during recess, *Briscoe v. Sch. Dist. No. 123*, 32 Wn.2d 353, 201 P.2d 697 (1949), the danger that a darkened room under gymnasium bleachers might be used for indecency between school boys and girls, *McLeod*, 42 Wn.2d at 322, and the danger that a student with a history of physically and sexually assaulting younger female students might assault another female student, *N.L.*, 186 Wn.2d 422.

14

This duty to protect students is different from the school district's duty as an employer because it requires schools to anticipate and take precautions against foreseeable harms, regardless of whether the harm arises from strangers, visitors, other students, or its employees. *See Niece*, 131 Wn.2d at 49; *Rodriguez v. Seattle Sch. Dist. No. 1*, 66 Wn.2d 51, 52-53, 401 P.2d 326 (1965) (citing *McLeod*, 42 Wn.2d 316; *Briscoe v. Sch. Dist. No. 123*, 32 Wn.2d 353, 201 P.2d 697 (1949); *Rice v. Sch. Dist. No. 302*, 140 Wash. 189, 248 P. 388 (1926)). (In contrast, the duty to control (or supervise) employees is limited to the foreseeable acts of employees.)

The "essential rationale" for imposing such a duty on school districts arises from the school districts' status as temporary caretakers. *N.K. v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 175 Wn. App. 517, 532, 307 P.3d 730 (2013) (quoting *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 228, 802 P.2d 1360 (1991)). Because the duty to protect students from foreseeable danger is triggered by the school district's relationship with the student, the duty is not necessarily limited by school hours or school premises; it can extend to school-sanctioned, off-campus activities as well. *Chappel v. Franklin Pierce Sch. Dist., No. 402*, 71 Wn.2d 17, 24, 426 P.2d 471 (1967) (off-campus Key Club initiation); *Carabba v. Anacortes Sch. Dist. No. 103*, 72 Wn.2d 939, 435 P.2d 936 (1967) (off-campus wrestling match).

An off-campus event qualifies as a school-sanctioned event if the school district expressly or tacitly authorizes it. A school district may have tacitly authorized an off-campus event when (1) educational and cultural values inhere in the normal activities of the extracurricular student body organization hosting the event, (2) the school assigned a faculty member to supervise that student organization, and (3) that faculty member was involved in planning or supervising the subject event. *See Chappel*, 71 Wn.2d at 24. The fact that the organization is a recognized student organization is not enough. *Coates v. Tacoma Sch. Dist. No. 10*, 55 Wn.2d 392, 396-97, 347 P.2d 1093 (1960). Educational and cultural values must inhere in the normal activities of the organization. *Id.* The faculty member assigned to supervise the organization must also be involved in planning the event. *Rhea v. Grandview Sch. Dist. No. JT 116-200*, 39 Wn. App. 557, 559, 561, 694 P.2d 666 (1985).

Here, it is beyond dispute that high school basketball is an extracurricular student activity. *See Coates*, 55 Wn.2d at 394. It is also beyond dispute that the coach was assigned by the school district to supervise the girls' varsity basketball

16

team and that he was involved in planning the social event at his home. Text

messages between the coach and the two students confirm this.[7] CP at 64-78.

_____

[7] Those text message exchanges between the male student (Pavel) and the female student (Sheila) and the female student and the coach (Igor) communicated the following:

[Unknown date and time]

| Pavel: | Wht u doin? |
|---|---|
| Sheila: | With cookie, Leo & Stinus.... We went to mcdonalds. What are you doing? |

Feb. 18, 2011 7:01 PM ·

| Pavel: | At the school playin bball then goin to igors! |
|---|---|
| Sheila: | Ha nice!! What's at igors? ... Oh yeah my icecream! Lmao [(laughing my ass off)] |
| Pavel: | U already forgot. . [Derogatory term.] Well nothin anymore I guess haha |
| Sheila: | What did I forget? |
| Pavel: | I told u bout igors house [derogatory term] |
| Sheila: | No you didn't tell me about his house haha you just said I should come & I said yeah<br>What Are you guys doing there? |

Feb. 18, 2011 7:29 PM

| Pavel: | Were getting wasted thts wht were doin! |
|---|---|
| Sheila: | Haha ok! =) |

CP at 67-69.

Feb. 18, 2011 9:58 PM

| Igor: | Got your ice cream |
|---|---|
| Sheila: | Did you?! |
| Igor: | Yea bring victoria and come over |

Feb. 18, 2011 10:18 PM

| Sheila: | Kkk!!!! Will do! |
|---|---|

CP at 78.

The majority concludes that the after-hours social at the coach's home cannot qualify as a tacitly authorized school event because it was not a team event. Only one male and one female basketball player were present. I agree with the majority that this was not a team event.

But the coach may have been authorized to host more than team parties. As head coach for the girls' high school basketball team, the coach was tasked with creating a "positive" and "supporting" culture with the student athletes. CP at 387-88. A reasonable juror could interpret this directive to include fostering a positive culture between student athletes as well as a positive culture between student athletes and their coaches. Thus, there remains a question of material fact about whether the school district authorized the social event at the coach's home.[8]

The fact that the social event occurred around midnight off campus does not necessarily defeat liability either. Evidence suggested that the school district authorized the coach to host evening gatherings off campus. CP at 404-06. Evidence also showed that the coach was authorized to take the student athletes off

---

[8] Just as my negligent supervision analysis is limited to the issue of duty, my negligent protection analysis is also limited to the issue of duty. *See supra* note 4. Whether the school district reasonably discharged any duty it had to supervise or protect and whether any violation of such duties proximately caused the student athletes' deaths are questions I do not address. The issues of breach and proximate cause are not before us.

campus and was allowed to give them individual and team treats whenever he wanted. *Id.* According to the high school principal, the coach had complete discretion over these after-hours activities. The principal confirmed that the coach was not required to obtain any extra authorization from the school and that this blanket authorization included hosting an after-hours evening pizza party two hours away from the school in Ephrata, Washington. CP at 405-07.

The school district argues that it cannot be held liable for the social event because drinking alcohol has no extracurricular value. But a school district cannot relieve itself of all potential tort liability on the grounds that a particular part of an expressly or tacitly sanctioned activity possesses no educational or cultural value. *Chappel*, 71 Wn.2d at 24. To hold otherwise would allow school districts to escape liability completely because any act that causes injury can be deemed to lack educational or cultural value. We have therefore held a school district potentially liable for "'hazing'" activities conducted during an off-campus Key Club initiation ceremony, even though the "'hazing'" activity had no educational or cultural value. *Id.* at 19, 24. Likewise, a school district may be liable for rough "'horse play'" by students during an off-campus lettermen's club initiation, even though "'horse play'" might lack educational or cultural value. *Sherwood v. Moxee Sch. Dist. No.*

*90*, 58 Wn.2d 351, 360, 363 P.2d 138 (1961); *id.* at 360-61 (Hill, J., concurring in result).

To be sure, school districts are not automatic insurers of their students' off-campus safety. But when school districts voluntarily choose to sanction and encourage off-campus student/coach activities, knowing that underage drinking among high school students at off-campus events is pervasive and dangerous, our case law requires that they act with reasonable care. In this case, the questions of whether the district sanctioned the event at the coach's home, whether such sanctioning triggered a duty to protect the students at the coach's home, and whether the district's alcohol-free workplace and student activities policies satisfied that duty are for the trier of fact to decide.

## CONCLUSION

I agree with the majority's decision to affirm summary judgment dismissal of the plaintiff's negligent hiring, negligent retention, breach of contract, and vicarious liability claims. But I would reverse the summary dismissal of her negligent supervision and negligent protection claims. I therefore dissent in part.

Gordon McCloud, J.

Stephens, C.J.

González, J.

Yu, J.